**Bonnie Gail WEIRICH, Appellant,**

v.

**Opal WEIRICH, Appellee.**

No. D-0477.

Supreme Court of Texas.

Dec. 22, 1993.

ON PETITION FOR PUBLICATION OF OPINION

Petition to order the court of appeals opinion published pursuant to Rule 90(c), Texas Rules of Appellate Procedure is denied.

*Concurring opinion by* ENOCH, J.

*Dissenting opinion by* DOGGETT, J., joined by GAMMAGE and SPECTOR, JJ.

Justice ENOCH concurs with denial of motion to publish.

My colleague, Justice Doggett, reiterates points that are routinely raised in the continuing debate about whether the opinions of intermediate appellate courts should be published. Belied by the stridency of his commentary, Justice Doggett's opinion, however, simply demonstrates the problem encountered with a rule that dictates non-publication of an intermediate appellate court's opinion unless the opinion satisfies certain criteria. That is, that judges can disagree on whether a particular decision meets the criteria of Rule 90(d) and should, therefore, be published.[1] Tex.R.App.P. 90(d).

I agree that this case exposes the problem with the non-publication rule. However, as with all debates there is another side—the huge cost to legal practitioners, and ultimately the consumer of legal services, to maintain enormous libraries of legal treatises and case opinions. *See* David M. Gunn, *"Unpublished Opinions Shall Not Be Cited As Authority": The Emerging Contours of Texas Rule of Appellate Procedure 90(i)*, 24 St. Mary's L.J. 115, 144 (1992); Hon. Frank G. Evans, Hon. James F. "Bud" Warren and Lynne Liberato, *To Publish or Not to Publish? That is the Question*, 24 Houston Law. 18 (July–August 1986).

The fourteen courts of appeals in this state are issuing opinions in thousands of cases every year. *See* Office of Court Administration, Official Docket Activity Report for the Fourteen Courts of Appeals 6

---

1. Justice Doggett implies that the courts of appeals are somehow acting erroneously by not publishing their opinions. 867 S.W.2d at 789. To the contrary, Rule 90(d) works the reverse. Opinions are *not* to be published unless the opinion satisfies the elements for publication set forth in that rule, in which event the courts of appeals are then to order that the opinion be published. Rule 90(d) states:

    An opinion by a court of appeals shall be published *only if,* in the judgment of a majority

of the justices participating in the decision, it is one that (1) establishes a new rule of law, alters or modifies an existing rule, or applies an existing rule to a novel fact situation likely to recur in future cases; (2) involves a legal issue of continuing public interest; (3) criticizes existing law; or (4) resolves an apparent conflict of authority.

Tex.R.App.P. 90(d) (emphasis added).

(Aug. 1993). Between September 1992 and August 1993, a total of 2,169 opinions were ordered "publish." But, if all opinions rendered had been ordered "publish," the number of published opinions would have been 9,380.[2]

In the debate over whether to have a non-publication rule, it is important to note that *all* opinions, regardless of the "publish" designation, are available to the public.[3] They are public documents. To order "publish" of an opinion has no effect at all on the "publicness" of the opinion of the court. For the public, such an order only has the effect of requiring the opinion to be placed in a book of a private publisher, who then has a new product to sell to the lawyer, who then passes that cost on to the consumer. Of course, the *legal* effect of a "publish[ed]"

opinion is that the case can then be "used" by the legal practitioner in the trial and appeal of cases. But, again, this means that a competent trial and appellate attorney will buy the book in which the opinion is "publish[ed]," and therefore, the consumer will ultimately pay the bill.

Perhaps there is a better way to resolve the competing interests of, on the one hand, the ability of counsel to use an opinion that ultimately should have been published, but was not, and on the other hand, the reality of escalating costs for legal libraries.[4] However, it seems to me that moving to a resolution is not furthered by resorting to emotional language, appealing to the most cynical of cynics, or disparaging our fellow members of the judiciary.[5]

**2.** Not only is the substantial number of opinions issued by the courts of appeals every year one reason given for having a non-publication rule, but the dramatic increase in court productivity also supports the reasoning of the proponents for a non-publication rule. The courts of appeals wrote 6,147 opinions in 1983, up from 1,820 in 1980. *See* Hon. Max N. Osborn, *Publication of Opinions By the Texas Courts of Appeals,* 47 Tex. B.J. 655 (1984).

Furthermore, Texas is only one of several states that have found it necessary to regulate publication of intermediate appellate court opinions. *See e.g.,* Ariz.R.Sup.Ct. 28; Ark.Sup.Ct.R. 5–2; Cal.R.Ct. 976; Conn.Gen.Stat.Ann. § 51–215; Del.Sup.Ct.R. 93; Hawaii R.App.Pro. 35; Ind. R.App.P. 15; Ill.Rev.Stat. ch. 110A, ¶23; Iowa Sup.Ct.R. 10(b); Kan.R.S.Ct. 7.04 (found in Kan. Stat.Ann. § 60–2701a (1983)); Ky.R.Civ.P. 76.28; Md.R.P. 8–114; Mass.R.Ct. 1:28; Minn.R.Civ. App.P. 136.01(1)(b); N.Y.Jud.Law § 431 (McKinney 1983 & Supp.1993); Okla.Stat.Ann. tit. 20, § 30.5 (West 1991 & Supp.1993); N.J.R. 1:36–3; Utah Code of Judicial Admin.Rule 4–508; Wash.Rev. Code § 2.06.050 (West 1988 & Supp.1993); Wis. Stat.Ann. § 809.23(d) (West 1993).

Also, I note that Justice Doggett asserts that my reference to this "much larger number is misleading." 867 S.W.2d at 790 n. 4. It is, but only where one deletes any mention of opinions in criminal cases (the courts of appeals also handle intermediate appeals in most criminal cases) and, then further, makes all criticism of a rule regarding non-publish applicable to only those cases in which a motion to publish has been filed. *Id.*

**3.** Justice Doggett's opinion gives subtle clues that he really is not saying the public has no access to these opinions. For example, he opens with "the public has lost any real, continuing *use* [of the opinion]." 867 S.W.2d at 789. He then refers to an "expanding body of *semi*-secret law." 867

S.W.2d at 789. Also, he expresses concern about "concealing such opinions from public *usage*." 867 S.W.2d at 789. Finally, he concedes that public *access* is a problem regardless of whether the opinion is ordered "publish" or not. 867 S.W.2d at 790.

**4.** A possible suggestion is that in lieu of having a rule regarding when intermediate appellate courts' opinions should be published, those courts should be permitted to resolve appeals by way of memorandum orders and not be required to write a full opinion in every case. *See* Justice George Rose Smith, *The Selective Publication of Opinions: One Court's Experience,* 32 Ark.L.Rev. 26, 27 (1978). Another suggestion is to have a category approach to deciding whether to publish opinions. *See* Hon. Frank G. Evans, Hon. James F. "Bud" Warren and Lynne Liberato, *To Publish or Not to Publish? That is the Question,* 24 Houston Law. 18 (July–August 1986).

**5.** To this comment, Justice Doggett retorts that his is but "legal realism," not "cynicism." 867 S.W.2d at 789 n. 1.

Legal realism is the *fact* that over 80% of the applications for writ of error to the Texas Supreme Court that are granted are in cases where the court of appeals has ordered its opinion to be "publish[ed]." *Accord* 867 S.W.2d at 789 n. 1. This means that at least four justices on this court, in a significant number of instances, agreed with the majority of a panel on the courts of appeals that, indeed, the case in which that court voted to "publish" the opinion was a case meeting the criteria of Rule 90. Essentially, the case was legally significant to the jurisprudence of the State. However, Justice Doggett's comment is that "one [reason for non-publish] ... *no doubt* ... is the hope [by some of our courts of appeals] that a lesser standard of scrutiny will be

Because I agree with the majority of this Court that the opinion by the court of appeals below does not satisfy the criteria for "publish" under Rule 90(d), I join with the Court's denial of the motion to publish.

Justice DOGGETT, joined by GAMMAGE and SPECTOR, JJ., dissenting.

Bonnie Weirich lost her children, and now the public has lost any real, continuing use of the final judicial writing recounting her ordeal, which involved a nearly twelve-year journey through the legal system. After obtaining a judgment against her former husband and mother-in-law for their respective roles in the seven-year parental kidnapping of her two children, she suffered defeat in the court of appeals in 1990. *Weirich v. Weirich,* 796 S.W.2d 513 (Tex.App.1990). This Court reversed and remanded to that court in 1992. *Weirich v. Weirich,* 833 S.W.2d 942 (Tex.1992). On remand, the court of appeals affirmed the trial court's judgment, but denied Weirich's request to publish its opinion, the last chapter in what had become a handbook on the application of the civil parental kidnapping statute. *See* TEX.FAM.CODE ANN. § 36.02 (Vernon 1986) (Liability for Interference with Child Custody). I dissent today not only because of the

importance of publishing this particular opinion, but also because of the public interest in discouraging an expanding body of semi-secret law.

For a variety of reasons, one of which no doubt is the hope that a lesser standard of scrutiny will be applied by this Court,[1] some of our courts of appeals continue to restrict publication of large segments of their work.[2] The privatization of this written product makes a taxpayer financed appellate endeavor useless for all but the litigants involved. This development conflicts with the important principle we recently affirmed that "[o]ur courts are endowed with a public purpose—they do not sit merely as private tribunals to resolve private disputes." *Houston Cable TV, Inc. v. Inwood West Civic Assoc.,* 860 S.W.2d 72 (Tex.1993) (per curiam); *Public Citizen v. Third Court of Appeals,* 846 S.W.2d 284, 285 (Tex.1993) (Doggett, J., concurring on Order Denying Petition for Publication).[3] Just as this Court eventually acted to disapprove of what was basically the buying and selling of judicial opinions through vacatur, it should also discourage concealing such opinions from public usage.

Content with the notion that "*all* opinions ... are available to the public," 867 S.W.2d at 788, Justice Enoch mistakes possible avail-

---

applied by this court." 867 S.W.2d at 789 (emphasis added).

Cynicism is the *speculation* that this high incidence of correlation between granted applications for writ of error and *published opinions* results from improper motives, as opposed to proper motives, of justices of the courts of appeals.

1. This is legal realism, not emotional cynicism as claimed by the concurrence of Justice Enoch. 867 S.W.2d at 787. Nor am I the first to note the potential effect of publication on the scrutiny applied by this Court. As another well-versed commentator observed:

   Strategically, the petitioner's chances of a grant of an application for writ of error are increased if the court of appeals' opinion is published. If the court of appeals' opinion is unpublished, the petitioner should consider filing a motion to publish the opinion in the court of appeals.

   James A. Vaught, *Internal Procedures and Motion Practice in the Supreme Court,* STATE BAR OF TEXAS, 7TH ANNUAL ADVANCED CIVIL APPELLATE PRAC. COURSE E–11 (1993). Although only about 30% of the opinions by the courts of appeals are published, *see infra* note 2, during the last annual reporting

period 82.7% of the applications for writ of error granted by this Court involved published opinions; only 17.3% involved unpublished opinions. *Id.* at E–10.

2. During the last annual reporting period, Sept. 1, 1992–Aug. 31, 1993, the fourteen courts of appeals published only thirty percent of their opinions. OFFICE OF COURT ADMINISTRATION, OFFICIAL DOCKET ACTIVITY REPORT FOR THE FOURTEEN COURTS OF APPEALS 6 (Aug.1993). Publication rates vary dramatically. The 13th court in Corpus Christi, published 42% of its opinions while the 2nd, 4th, 5th, 7th, 11th and 12th courts (Fort Worth, San Antonio, Dallas, Amarillo, Eastland and Tyler) *all* published less than 20% of their opinions during that time. OFFICIAL DOCKET ACTIVITY REPORT, *supra.* This disparity is not a recent development. *See* Frank G. Evans, et al., *To Publish or Not to Publish? That is the Question,* 24 HOUS LAW. 18, 19 (July–Aug.1986).

3. For those who question the value of separate writings on motions such as that presented today, *Public Citizen* is instructive. Much of it was adopted verbatim a few months later by this Court in *Houston Cable TV,* 860 S.W.2d at 73.

ability for probable accessibility. Obstacles to access can develop even for published opinions. *See* Walter Borges, *Courts Profit Nicely from Copy Fees*, TEX.LAWYER, Aug. 30, 1993, at 1 (describing $172.80 charge by one court of appeals for an opinion of great public interest as well as $1 per page charges for opinions at thirteen of the fourteen courts of appeals). For unpublished opinions, the barriers to access are truly significant. Theoretically, the public may be able to get an unpublished opinion from the clerk of a court of appeals, but there is no mechanism for comprehensive tracking of such writings to determine their subject matter or even that they have been released. During the last state fiscal year, there were unpublished opinions in 3,039 civil cases.[4] Apparently the only way to stay abreast of these decisions is by repeated visits to the clerks of these fourteen courts or by relying on the incomplete coverage of an expensive electronic database service.[5]

Even on those occasions when access is obtained to an unpublished opinion, a practitioner is unable to use that decision as legal authority. TEX.R.APP.P. 90(i). While such an opinion may enlighten an attorney, the parties are nonetheless bound to relitigate an issue which may already have been decided. The attorneys are

> put in the position of finding a court of appeals decision directly on point, but being unable to cite the opinion to a trial court whose own decision will be appealed to the same court of appeals, or even worse, being unable to cite the opinion to the same court of appeals.

*See* Herring, *supra* note 5. Lawyers are "misled because they cannot follow these new trends in the law ... [and] are forced to rely on old authority, and, through no fault of their own, risk reversal on appeal." Paul W. Nye, *The Unpublished Opinion Controversy (The Great Judicial Coverup)*, 4 ADVANCED

APPELLATE PRAC. COURSE W–1 (1990). Appropriately described as "citation censorship," Herring, *supra*, at 25, stamping an opinion "do not publish" can be almost as effective in removing a writing from the public domain as sealing it, a practice we have previously prohibited. *See* TEX.R.CIV.P. 76a(1).

At least one member of this Court, in his public comments, has advocated publication of all appellate opinions. Tape of Third Annual Conference on Techniques for Handling Civil Appeals, University of Texas School of Law (June 11, 1993) (Remarks of Justice Raul A. Gonzalez) ("[Given] the uneven application of Rule 90 by the courts of appeals or even different panels within the courts of appeals.... I advocate to ... publish them all."). He does not express that view today, and I do not share it. Those appellate writings which concern matters so trivial or fact-specific as to have little potential for broader application certainly need not be published,[6] but many unpublished opinions constitute an important part of our collective common law jurisprudence.

A growing body of unpublished law could also lead us to the next and more perverse step of depublication. The California Supreme Court has assumed the pernicious power to "decertify" decisions of intermediate courts of appeals. CAL.R.CT. 976(c)(2), 979(d). The result of "unabated" depublication, as one commentator noted, is that

> more and more of the case law of California will become invisible. The uncertainty created by the potential for depublication pervades every new opinion that emerges from the courts of appeal. Lawyers are reluctant to cite a new case, and other courts of appeal are reluctant to rely on it until enough time has elapsed to assure its survival as a published opinion.

*of Unpublished Opinions*, TEX.LAWYER, Oct. 8, 1990, 24.

---

4. Of these, for the most part it is those in which a motion to publish has been filed that really raise the question presented today. Justice Enoch's reference to a much larger number is misleading.

5. The releasing of unpublished opinions to electronic databases appears to be somewhat inconsistent. Charles Herring, Jr., *Tomb of the Unknown Precedent: Appellate Rule 90 and the Rash*

6. Contrary to Justice Enoch's suggestion, 867 S.W.2d at 787, my objection is not to Rule 90, but to its misapplication by courts to deny publication requests in cases such as this that involve questions of clear public import.

Gerald F. Uelman, *Mainstream Justice*, CAL. LAW., July 1989, at 40; *see also* Lisa Stansky, *Depublication: Law Made by Eraser*, THE RECORDER, Jan. 9, 1990 (Supp.), at 2.

In contrast, for now at least, when this Court grants an application for writ of error to review what is believed to be an erroneous intermediate court decision, that same erroneous opinion of the court of appeals is ordered to be published. TEX.R.APP.P. 90(h). Such publication is directed to aid understanding of the subsequent disposition by this Court. Surely the same reasoning should apply when, subsequent to our determination that the intermediate court erred, that court corrects its mistake on remand. In such a case, a motion for publication should be generously granted to assure full understanding by all observers of the complete judicial decisionmaking process. Leaving one opinion unpublished not only prevents the underlying effort from assisting in future decisions, but also hinders the ability of practitioners and legal scholars to trace the case history and gain insight into the ultimate disposition. Despite the considerable attention this particular case has drawn, any attempt to analyze it will be incomplete due to an inability to read the final chapter.

And that chapter qualifies under either of the first two of the various alternative grounds under our rule mandating publication if the writing

> (1) establishes a new rule of law, alters or modifies an existing rule, or applies an existing rule to a novel fact situation likely to recur in future cases; (2) involves a legal issue of continuing public interest; (3) criticizes existing law; or (4) resolves an apparent conflict of authority.

TEX.R.APP.P. 90(d). With at least 100,000 parental kidnappings annually, this is a serious nationwide problem. SEE LEONARD KARP AND CHERYL L. KARP, DOMESTIC TORTS 192 (1989). As some of those kidnappers become defendants in Texas civil proceedings, it will be necessary to answer a variety of questions regarding the application of section 36.02 of the Family Code. Several of these matters were addressed here by the court of appeals, including the sufficiency of evidence to sustain a jury finding of liability for takers and aiders or assistors, the submission of separate statutory violations in a single jury question, the availability of common law causes of action in conjunction with a statutory child abduction suit, and the submission of a predicated damage question subjecting multiple defendants to joint and several liability for statutory child abduction. These issues will continue to arise until they are settled by authoritative opinions. Failure to publish such an opinion increases the cost to future litigants of prolonged debate over these issues due to a lack of guidance from the judiciary.

Because it is important to the jurisprudence of the state that this opinion, and others like it, be available for review and reliance by all citizens, I dissent.