**Affirmed and Majority, Concurring, and Dissenting Opinions filed October 29, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00502-CV

---

**CHRISTINE E. REULE, Appellant**

**V.**

**M&T MORTGAGE, M&T BANK, BAYVIEW LOAN SERVICING, LLC, BAYVIEW FINANCIAL TRADING GROUP, LP, BAYVIEW FINANCIAL, LP, HUGHES, WATTERS, ASKANASE, LLP, CAROLYN TAYLOR, AUDREY LEWIS, JEFF LEVA, SANDY DASIGENIS, AND RLZ INVESTMENTS, INC., Appellees**

---

On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2008-75636

---

## M A J O R I T Y   O P I N I O N

Appellant Christine E. Reule appeals from a take nothing judgment in favor of appellees M&T Mortgage, M&T Bank, Bayview Loan Servicing, LLC, Bayview Financial Trading Group, LP, Bayview Financial, LP, and Hughes, Watters & Askanase, LLP (collectively, Mortgagees/Representatives), as well as

appellees Carolyn Taylor, Audrey Lewis, Jeff Leva, Sandy Dasigenis (collectively, Trustees), and appellee RLZ Investments, Inc. We affirm.

## I. BACKGROUND

### A. Overview

Reule purchased a condominium located in Houston in 1999. As part of the purchase, Reule financed $32,300 with a loan from First Capital Bank. Reule signed a promissory note and a Deed of Trust. For at least four years, Reule made payments on the note. In 2003, Bayview Financial Trading Group, LP acquired Reule's mortgage. Reule alleged that she developed a dispute with her new mortgage servicer, M&T Mortgage, sometime in 2004. The dispute centered on how M&T Mortgage credited sums she paid in excess of her monthly mortgage payment and payments M&T Mortgage made for her taxes. In ultimate response to M&T Mortgage's refusal to "make proper credits to the account," Reule sent M&T Mortgage a check for $205.98, the amount of her regular monthly mortgage payment, in November 2006, and noted in the memo line that is was "full and final pmnt on the disputed account." M&T Mortgage cashed the check. Thereafter, Reule made some mortgage payments, but failed to pay others.

In March 2007, Reule's mortgage loan servicing was transferred to Bayview Loan Servicing, LLC (Bayview Loan). On April 19, Hughes, Watters & Askanase, L.L.P. (Hughes, Watters), on behalf of Bayview Loan, accelerated the payments due under the note and notified her Reule that a foreclosure sale would occur in June. Bayview Loan did not proceed with the foreclosure sale. Reule stopped making payments on her mortgage in July 2008.

Meanwhile, in December 2008, Reule filed suit against the Mortgagees/Representatives, the Trustees, and RLZ Investments arising largely

from her claim that she paid in full on her home mortgage through the partial payment marked "full and final," as well as the Mortgagees/Representatives' ongoing efforts to collect payments on what they alleged was a delinquent account. Reule asserted as "claims" (1) accord and satisfaction; (2) violations of the Texas Deceptive Trade Practices Act (DTPA); (3) violations of the federal Fair Debt Collection Practices Act (FDCPA); (4) violations of the Texas Debt Collection Act (TDCA), and (5) breach of contract.

In February 2009, Bayview Loan notified Reule that she was in default and demanded payment of $1,839.80. Reule did not pay the amount Bayview Loan claimed was owed. Bayview Loan subsequently foreclosed on Reule's property, and the property was sold in a July 5, 2011 foreclosure sale. Reule continued living in the property despite the foreclosure sale and was still occupying the property as of the date of trial in May 2013. After the foreclosure, Reule filed a second suit for declaratory relief that was consolidated with her December 2008 suit.

## B. The Summary Judgments

The trial court granted partial summary judgment on many of Reule's claims in three separate orders. In December 2009, the trial court granted Appellees' "Motion for Partial Summary Judgment" on accord and satisfaction and the DTPA claims. In January 2012, the trial court granted in part and denied in part the Mortgagees/Representatives' "Motion for Second Motion [sic] for Summary Judgment." Specifically, the trial court ordered that the Mortgagees/Representatives' traditional and no-evidence motion for summary judgment on the FDCPA claims and TDCA claims were granted and the

3

Mortgagees/Representatives' no-evidence summary judgment motion on Reule's breach of contract and Declaratory Judgments Act claims were denied.[1]

Finally, in July 2012, the trial court granted the Mortgagees/Representatives' motion for summary judgment on all of Reule's pleaded damage claims that sounded in tort. Specifically, the trial court granted the motion stating, "Plaintiff as a matter of law cannot recover personal injury, mental anguish and/or pain and suffering type damages through Plaintiff's wrongful foreclosure, breach of contract, and declaratory judgment causes of action."

### C. The Jury Trial

The trial court called all remaining claims to trial on May 30, 2013. Reule and her daughter were the only witnesses. Reule rested on June 5. The trial court heard and granted motions for directed verdict on the following claims, which it specifically documented in the final judgment:

(1) all of Reule's claims against Bayview Financial Trading Group, LP, Bayview Financial, LP, M&T Mortgage, M&T Bank, Hughes Watters, Carolyn Taylor, Audrey Lewis, Jeff Leva, and Sandy Dasigenis;

(2) the wrongful foreclosure and the section 12.001 claims against Bayview Loan;[2] and

(3) the wrongful foreclosure and breach of contract claims against RLZ Investments, Inc.[3]

---

[1] The trial court also granted in part Reule's motion for summary judgment regarding chain of title and limitations on the foreclosure sale. In a September 14, 2012 order, the trial court reconsidered the rulings, denied Reule's motion, and declared that "Defendants have established as a matter of law that the initial acceleration of that note was abandoned and the loan reinstated such that the statute of limitations regarding the foreclosure sale had not expired before the foreclosure sale had occurred." Although Reule challenges the denial of the motion for summary judgment, Reule does not urge error in this declaration.

[2] It appears that these were the only claims raised against RLZ Investments.

The jury returned a verdict in which it determined, in pertinent part, that (a) Bayview Loan is the owner of the Deed of Trust; (b) Bayview Loan did not fail to comply with the terms of the Deed of Trust; (c) Reule failed to comply with the terms of the Deed of Trust; and (d) Reule and Bayview Loan did not agree to a note Reule claimed to have signed in purple, know at trial as the "Purple Ink Note."

### D. The Post-Verdict Motions

The Mortgagees/Representatives filed a post-trial motion for sanctions against Reule, seeking sanctions of $3,015. As grounds, the Mortgagees/Representatives asserted Reule significantly delayed trial and wasted the time of the trial court, the parties and their counsel, and the jury by, *inter alia*, tardiness to court proceedings, failing to be prepared for pretrial proceedings, failing to be prepared to present her case in chief, changing her exhibit list several times during trial, and failing to provide counsel with copies of her exhibits. The trial court granted the motion for sanctions on June 24, 2013, and ordered Reule to pay $900 "in sanctions for interfering with the Court's ability to hear evidence and decide issues of law and fact in the trial of this matter."

Reule filed a motion and an amended motion for judgment notwithstanding the verdict (JNOV), asking the trial court to disregard all jury findings and to enter judgment in her favor. She did not file a motion for new trial. The trial court

---

[3] Reule has not challenged any of these directed-verdict rulings. In her reply brief, Reule claims that HWA LLC failed to "file" a motion for directed verdict. But a motion for directed verdict may be made orally. *See Walker v. Hitchcock Indep. Sch. Dist.*, No. 01-11-00797-CV, 2013 WL 3771302, at *8 (Tex. App.—Houston [1st Dist.] Jul. 16, 2013, no pet.) (mem. op.) (citing *Dillard v. Broyles*, 633 S.W.2d 636, 645 (Tex. App.—Corpus Christi 1982, writ. ref'd n.r.e.), and noting that Tex. R. Civ. P. 268 regarding directed verdicts only requires specificity, which can be met with an oral or written argument). Further, the trial court not only entertained a motion for directed verdict from HWA LLC at the close of Reule's evidence, the trial court asked for and received argument on that and all of the other motions for directed verdict.

5

denied the JNOV motion and entered a take-nothing judgment.  That same day, the trial court signed an amended order of sanctions, which provided that, as an alternative to paying the $900 in sanctions, "Ms. Reule may submit to the court a written statement in her own handwriting that states 100 times that, 'I will not waste the time of the court, opposing counsel, jurors, or court personnel.'"  Reule timely noticed her appeal.

## II.  ANALYSIS

### A. Issues on Appeal

Reule's brief, though redrawn with additional length afforded, fails to "state concisely all issues or points presented for review."  Tex. R. App. P. 38.1(f).  We nonetheless construe Reule's brief liberally to reach her appellate issues on the merits, where possible.  *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008).  Despite our liberal reading of her brief, we note that pro se litigants such as Reule are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure.  *Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 185 (Tex. 1978); *Brown v. Tex. Emp't Comm'n*, 801 S.W.2d 5, 8 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

Liberally construing Reule's brief, we glean challenges to the following: (1) the sufficiency of the evidence to support several jury findings; (2) several pre-trial summary judgment orders; (3) the trial court's allowing the withdrawal of Reule's counsel nearly two years before trial, over Reule's objection; (4) the trial court's refusal to submit jury questions provided by Reule; (5) the trial court's failure to submit Reule's state and federal fair debt collection claims to the jury; (6) the denial of Reule's JNOV motion on damages for medical costs; (7) the post-trial amended order granting sanctions against Reule; (8) the denial of Reule's quiet-title claim; (9) the trial court's refusal to apply New York law to some of

6

Reule's claims; (10) the timeliness of the Mortgagees/Representatives' trial brief; (11) the Mortgagees/Representatives' purported violations of motions in limine; and (12) the trial court's "tossing out" of Reule's "chain of title" claim.

Because several of Reule's issues fall into similar categories, we discuss them together. But we begin our analysis of Reule's issues with her sufficiency complaints.

## B. Sufficiency of the Evidence

Reule challenges the sufficiency of the evidence to support the jury's answers to questions 1, 2, 4, and 8. We begin our analysis by noting that Reule challenged both the legal and factual sufficiency of the evidence to support these jury findings. But, to preserve error for appellate review, Reule would have had to voice a complaint of factual insufficiency of the evidence to support a jury finding in a motion for new trial. Tex. R. Civ. P. 324(b)(2). Reule did not file a motion for new trial. Reule filed a motion for JNOV. A JNOV motion does not preserve a challenge to the factual sufficiency of the evidence. *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991); *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Thus, Reule has not preserved her factual-sufficiency complaints. We consider only the legal sufficiency of the evidence to support these findings.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem.*

7

*Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We must first examine the record for evidence that supports the finding; if there is no evidence to support the finding, then we examine the entire record to determine if the contrary position is established as a matter of law. *See id.* We may sustain the issue only if the contrary position is conclusively established. *Id.*

We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates that: (1) there is a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. The jury is the only judge of witness credibility and the weight to give to a witness's testimony. *See id.* at 819. With these principles in mind, we turn to Reule's legal-sufficiency challenges.

*1. Question 1: Bayview Loan Servicing owns the deed of trust*

Question No. 1 asked the jury whether Bayview Loan Servicing is the owner of the Deed of Trust and instructed the jury to answer "yes" if Reule failed to prove by the preponderance of the evidence that Bayview Loan Servicing is not the owner of the Deed of Trust. Reule's own exhibits show that First Capital Bank assigned the Deed of Trust to "Wachovia Bank, N.A. as Trustee (Bayview)," and that Wachovia Bank assigned the Deed of Trust to Bayview Loan Servicing. During cross-examination, the following exchange occurred between Reule and the Mortgagees/Representatives' attorney:

> Q. So based on -- based on the documents I just showed you, which is, when we first started off, the Deed of Trust with First Capital as a result in the sale of your property. Then the assignment occurs from Wachovia as the trustee -- or from First Capital to Wachovia as the trustee for Bayview. Then there's a second assignment that goes from

8

Wachovia as a trustee for Bayview to Bayview Loan Servicing, do you agree with me that at a minimum that's what those documents state?

A. That's what these documents state.

Q. Okay, and --

A. But I'm disputing of whether or not they're required additional assignments.

Q. I understand that, Ms. Reule, but you --

A. Okay.

Q. Based on those documents that you saw, those legal documents that are filed with the real property records.

A. That's what your client did, correct.

Reule did not claim that there were subsequent assignments. And, although Reule vigorously contests that the Deed of Trust was ever validly transferred from the original owner, First Capital, Reule made payments to subsequent servicers or owners Interbay, M&T, and Bayview Loan Servicing without objection through at least 2005. Viewing the evidence in the light most favorable to the jury's finding, we conclude that legally sufficient evidence supports the jury's determination that Bayview Loan Servicing owned Reule's Deed of Trust. Her sufficiency challenge to the jury's answer to Question 1 is overruled.

2. *Question 2: Bayview Loan Servicing complied with the deed of trust*

In Question 2, the jury was asked if Bayview Loan Servicing failed to comply with the terms of the Deed of Trust and answered, "no." In her argument regarding this issue, Reule asserts that Bayview Loan Servicing failed to provide a notice to cure as required by the Deed of Trust prior to accelerating the note. The record reflects, however, that on February 24, 2009, Bayview Loan Servicing sent written notice to Reule that she was in default on her loan. This notice provided, pertinently:

9

We have not received the 7/1/2008 and succeeding installments. This is a formal demand for payment of the total amount past due, which is $1,839.80 as of the date of this letter. If payment by cashier's check or certified check is not received prior to the next installment due date, another installment will become due. Our acceptance of any funds less than the full amount necessary to reinstate the loan shall not constitute a waiver of our rights and/or remedies under the documents or applicable law.

If we do not receive payment or hear from you disputing the validity of the debt or any portion thereof within thirty (30) days, we will assume the debt to be valid. . . .

*[W]e will accelerate the maturity of the loan, declare the entire obligation due and payable without further demand, and begin foreclosure proceedings*. . . .

You have the right to bring a court action to assert the nonexistence of a default or any other defense to acceleration and sale of the property and you may have other rights under state law. *After the loan is accelerated, it may be reinstated if, at least 5 days before the scheduled sale of the property*:

1. All past due installments, late charges, advances and any other items secured by the loan documents are paid as if the loan was not accelerated, all reasonable attorney's fees, any Trustee's fees and costs incurred in enforcing the remedies under the loan documents are paid, and all breaches of any covenants or agreements made under the loan documents are cured; AND,

2. You take any other action reasonably required by us to assure that the lien and any interest in the property, and your obligation to pay the sums secured by the loan documents continue unimpaired and in full force and effect.

(emphasis added). This letter complies with the acceleration provision contained in the Deed of Trust that Reule claims Bayview Loan Servicing failed to follow.

Moreover, Reule acknowledged during cross-examination that "the notices of acceleration after that [letter] were consistent with [her] failure to pay the 30-day notice." In fact, she provided as one of her exhibits a Notice of Acceleration

and Notice of Substitute Trustee's Sale dated June 13, 2011, which advised her that she was in default and "that despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured." This letter stated that Bayview Loan Servicing "hereby accelerates the maturity of the Loan and declares the entire balance of the Loan due and payable in full." The letter explained that a foreclosure sale authorized by the Deed of Trust would take place on July 5 and that the payoff due as of June 14 was $44,967.50. The letter further advised that "the amount necessary to prevent this foreclosure sale may be determined by contacting" Hughes Watters.

From this evidence, the jury reasonably could have found that Bayview Loan Servicing did not fail to comply with the terms of the Deed of Trust. Thus, Reule's sufficiency challenge to the jury's answer to Question 2 is overruled.

### 3. Question 4: Reule failed to comply with the deed of trust

The jury answered "yes" to Question 4, which asked if Reule failed to comply with the terms of the Deed of Trust. The first provision of the Deed of Trust states, "Borrower shall promptly pay when due the principal of and interest on the debts evidenced by the Note and any prepayment and late charges due under the Note." And at the time of trial, it was undisputed that Reule had not paid her mortgage for 58 months. Thus, there is legally sufficient evidence that Reule failed to comply with the Deed of Trust.

### 4. Question 8: Bayview Loan Servicing and Reule did not agree to the "Purple Ink Note"

The jury determined in Question 8 that the "Purple Ink Note" was not agreed to by Bayview Loan Servicing and Reule. Reule alleged that the version of the note that bears her signature in black ink is not her signature. Reule could not find, did not produce, and did not offer into evidence a "Purple Ink Note." Reule agreed

11

she signed a note. Reule claimed that, of a large stack of documents that she did sign and return to her lender, only the note bore her signature in purple ink. Reule had no idea whether the note she signed is in any way different from the note made an exhibit in the trial. And, Reule did not actually claim that the note admitted into evidence at trial is a forgery—she merely recalled signing in purple ink and thought the loop on the "L" in her signature looked different. Reule adduced no evidence that the Mortgagees/Representatives (or anyone else) forged her signature on the note signed in black ink contained in our record.

In short, the issue of whether a Purple Ink Note existed and was agreed upon is based entirely on the jury's evaluation of the parties' credibility. And the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.* By their answer to Question 8, the jury indicated it did not believe Reule's testimony that she signed the note in purple ink. Accordingly, there is legally sufficient evidence to support the jury's answer to Question 8.

For the foregoing reasons, we overrule Reule's legal-sufficiency challenges. We now turn to her remaining issues, beginning with numerous issues that relate to pre-trial summary judgment orders.

## C. Pre-Trial Summary Judgment Orders

Many of Reule's complaints arise from pre-trial partial summary judgment orders, including her challenge to the denial of her motion for summary judgment, the partial summary judgment disposing of Reule's accord and satisfaction "claim" and DTPA claims, and the partial summary judgment in favor of the Mortgagees/Representatives on Reule's tort damages claims. For the reasons described below, all of these issues lack merit.

12

*1. Denial of Reule's motion for summary judgment*

Reule filed a motion for summary judgment in May 2009, seeking affirmative judgment on all of her claims. Although the trial court initially granted her motion in two regards, the trial court reconsidered that decision in a September 14, 2012 order and denied her motion in its entirety. On appeal, Reule challenges the trial court's denial of her summary judgment, the reconsideration, and certain evidentiary rulings associated with the denial. Reule devotes a substantial portion of her appellate briefing to arguing that her affirmative motion for summary judgment was well-founded and should have been granted and that the trial court abused its discretion by (a) reconsidering its summary judgment decision, (b) denying her motion to exclude and for sanctions, and (c) permitting new evidence and new theories from the Mortgagees/Representatives.

Generally, the denial of summary judgment cannot be reviewed on appeal. *See Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). Further, it is well settled that where the movant unsuccessfully moves for summary judgment and subsequently loses in a trial on the merits, the order denying the summary judgment cannot be reviewed on appeal. *United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Orozco v. Orozco*, 917 S.W.2d 70, (Tex. App.—San Antonio 1996, writ denied); *Pennington v. Gurkoff*, 899 S.W.2d 767, 769 (Tex. App.—Fort Worth 1995, writ denied); *Nash v. Civil Serv. Comm'n, Palestine*, 864 S.W.2d 163, 165 (Tex. App.—Tyler 1993, no writ). Consequently, we cannot review the trial court's denial of Reule's motion for summary judgment, nor the subsidiary issues associated therewith.

Under these circumstances, we overrule these issues.

## 2. *Summary judgment on accord and satisfaction*

Reule urges that the trial court should not have granted summary judgment in favor of the Mortgagees/Representatives on her "claim" of accord and satisfaction. The Mortgagees/Representatives sought summary judgment on Reule's accord and satisfaction "claims," urging that (1) the undisputed facts established that there was no agreement or meeting of the minds that the lender would accept a tender of less than one percent of the loan balance in satisfaction of the loan and (2) Reule's tender lacked good faith. The trial court granted the motion without specifying its basis.

The financial entities did not have a counterclaim for loan deficiency against Reule. At the time of trial and ultimate judgment, the Mortgagees/Representatives did not seek an award of deficiency damages against Reule. Accord and satisfaction is, as Reule acknowledges, an affirmative defense. *See* Tex. R. Civ. P. 94 (providing that accord and satisfaction is an affirmative defense). Stated differently, it is a matter in avoidance. Reule was not seeking to avoid a *claim* actually raised by the Mortgagees/Representatives. As such, even if the trial court erred in granting this summary judgment, the error is harmless.[4] *See Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919 (Tex. 2005) (per curiam) (explaining that subsequent events, such as a take-nothing judgment following a jury trial on a breach of contract claim, should be considered when determining harm from trial court's grant of summary judgment).

Accordingly, we overrule this issue.

---

[4] Reule complains that the trial court would not allow her to present "accord and satisfaction" evidence to the jury to persuade them that she was not in breach of the deed of trust. However, Reule did testify before the jury that she made final payment on her loan by way of the notation in the memo section of her check. And, she has not directed us to any location in the record where she requested a jury instruction on accord and satisfaction, or where any such request was denied by the trial court. *See* Tex. R. Civ. P. 276.

### 3. Summary judgment on damages

The Mortgagees/Representatives filed a June 2012 consolidated partial motion for summary judgment alleging that "as a matter of law . . . Plaintiff cannot recover personal injury, mental anguish and/or, pain and suffering type damages through Plaintiff's live causes of action." The trial court granted the motion and ordered summary judgment on such damage claims for Reule's wrongful foreclosure, breach of contract, and declaratory judgment causes of action.

At the close of evidence, the trial court directed a verdict against Reule on her wrongful foreclosure claims and her section 12.002 claims. Reule does not appeal those directed verdict rulings.[5] Reule failed to prove her breach of contract claim on the merits and, therefore, the jury did not reach the question of damages. As such, we conclude that any error in the trial court's order granting partial summary judgment on an element or elements of damages available upon proof of Reule's causes of action was rendered harmless by the trial court's unchallenged directed verdict on wrongful foreclosure and section 12.002, and the jury's verdict on breach of contract. *See id.*

Thus, we overrule this issue.

### 4. Partial summary judgment on Reule's DTPA claims

The Mortgagees/Representatives sought partial summary judgment on Reule's DTPA claims, urging that Reule is not a consumer as defined under the DTPA. The trial court granted the motion. On appeal, Reule challenges the trial court's granting of this motion.

---

[5] Although Reule discusses the law of wrongful foreclosure in detail in her brief, she neither references the directed verdicts on her wrongful foreclosure claims nor does she discuss any evidence that she claims to have adduced on the wrongful foreclosure claims.

We review the granting of a summary judgment de novo. *Mann Frankfort Stein Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Where, as here, the order granting summary judgment does not specify the grounds relied upon, we affirm "if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000).

A party moving for traditional summary judgment must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the party establishes such a right to judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). We review all evidence in the light most favorable to the nonmovant and indulge every reasonable inference. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156–57 (Tex. 2004).

The parties agree that a plaintiff must establish consumer status to pursue claims under the DTPA. *See Amstad v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). That is, the plaintiff must have sought or acquired goods or services by purchase or lease and those goods or services must form the basis of the DTPA complaint. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). Whether one is a consumer under the DTPA is a question of law. *Holland Mortgage & Inv. Corp. v. Bone*, 751 S.W.2d 515, 517 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

As a general rule, where the underlying transaction is a loan, consumer status is not conferred because money is neither a good or service. *See Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173-74 (Tex. 1980). Reule relies upon a line of authority from the Texas Supreme Court recognizing an exception to the general

16

rule of *Riverside w*here the objective of the transaction complained of was the purchase or lease of a good or service notwithstanding that the plaintiff borrowed money to complete the transaction. *See Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983). However, following our precedent construing *Flenniken*, and indulging all inferences in Reule's favor, none of her evidence of alleged deceptive trade practices pertains to the actual sales transaction or to a deceptive act related to the original financing of her home. *See Brown v. Bank of Galveston, Nat'l Ass'n*, 930 S.W.2d 140, 143–44 (Tex. App.—Houston [14th Dist.], *aff'd* 963 S.W.2d 511 (Tex. 1996), *abrogated on other grounds*, *Ford Motor Co. v. Ledesma,* 242 S.W.3d 32 (Tex. 2007)). Therefore, *Flenniken* does not apply. *Id.*

Reule's challenge to the trial court's summary judgment on her DTPA claims is overruled. Having addressed and overruled all of Reule's summary judgment related issues, we turn to her complaint regarding the withdrawal of her counsel.

### D. Withdrawal of Reule's Counsel

Reule challenges the trial court's 2011 order permitting G. P. Matherne to withdraw as her counsel.[6] Matherne filed his motion on June 30, 2011. His alleged good cause for withdrawal was that Reule had employed new counsel. He alleged that he had delivered a copy of the motion to Reule and advised her of her right to object. Matherne supplied the court with a last known address for Reule and advised her within the body of the motion of all pending settings. Matherne also attached a letter he had sent to Reule in which he advised her of the July 11,

---

[6] We note from our clerk's record that Matherne appears to have served as Reule's counsel only in a limited way. Reule herself signed her original petition and her first amended original petition. In fact, until the date of Matherne's motion to withdraw, our clerk's record contains only a single pleading signed by Matherne.

2011 deadline to file a response to the opposing parties' summary judgment motion and the setting on his motion to withdraw.

Reule responded to the motion to withdraw and objected. By her response, Reule challenged Matherne's allegation of good cause and stated that, although she had hired another lawyer, the new lawyer was not a substitute lawyer but was hired for one issue only. At the hearing on the matter, Matherne elaborated that he and Reule disagreed on legal strategy and, therefore, she had hired new counsel to pursue the matters that he did not feel were appropriate.

Reule did not assert that Matherne's motion was deficient in any way other than his allegation of good cause. The trial court granted the motion but delayed the effective date until after a response to the opposing parties' summary judgment motion was due. The trial court signed no summary judgment orders in 2011. Thus, following the 2011 summary judgment proceedings, Reule continued to represent herself, as she had done intermittently from the 2008 inception of the lawsuit, for more than two additional years and through a jury trial.

We review a trial court's ruling on a motion to withdraw as counsel for abuse of discretion. *See Sims v. Fitzpatrick*, 288 S.W.3d 93, 100 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Even where a trial court abuses its discretion by granting a noncompliant or inadequate motion to withdraw, such error is rendered harmless where the party is given adequate time to secure new counsel and time for such counsel to investigate the case and prepare for trial. *See Williams v. Bank One, Texas, N.A.*, 15 S.W.3d 110, 114 (Tex. App.—Waco 1999, no pet.).

Reule does not allege that she did not have sufficient time to retain new counsel. She does not allege that she sought a continuance to obtain counsel that

18

was denied.[7] We conclude that, as a matter of law, Reule was not harmed by the alleged error in permitting her counsel to withdraw. *See Williams*, 15 S.W.3d at 114.

Because this issue lacks merit, we overrule it. As detailed below, the remainder of Reule's issues are either inadequately briefed or not preserved for our review.

### E. Inadequately Briefed Issues

In one hundred and seven pages of briefing, Reule complains of nearly all of the trial court's rulings, including discovery, incidental, or dispositive rulings, over the course of five years of litigation against numerous defendants. Many of her factual assertions and arguments are not supported by record references. *See* Tex. R. App. P. 38.1(g), (i). Moreover, Reule has not provided a proper table of contents or authorities, statement of the case, and, most importantly, statement of issues presented. *See* Tex. R. App. P. 38.1(b), (c), (d), (f). Because her appellate brief is lengthy and poorly organized, it is difficult to discern the issues and arguments she presents for our review. Further, although we must construe Reule's brief liberally so as not to dispose of issues without reaching the merits where possible,[8] we note that the clerk's record and supplements contain over 2,000 pages. Additionally, Reule filed over 30 volumes of reporter's records, although the record from her trial is contained in only 12 volumes; several of these reporter's records share the same number. Thus, without proper citation, the voluminous nature of this record makes it difficult to discern whether there is any support for many of Reule's complaints. Despite our liberal construction of

---

[7] Indeed, Reule failed to cite a single authority in support of this issue. Thus, as well as being without merit, this issue is also inadequately briefed. *See* Tex. R. App. P. 38.1(i).

[8] *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008); *see also* Tex. R. App. P.38.9.

19

Reule's briefing, we conclude that the following issues were not adequately briefed.

### 1. Any claims against the Trustees and RLZ Investments, Inc.

Because of the deficits in Reule's briefing, it is difficult to determine which issues are directed to which parties. And, as discussed above, the trial court directed verdicts on all of Reule's claims against the Trustees and RLZ Investments, Inc.[9] Reule has not challenged any of the directed verdicts on appeal. Although Reule sporadically makes mention of some of these parties, she has not clearly identified any issues associated with them. We thus conclude that any issues concerning these parties have not been adequately briefed and are overruled.

### 2. Refusal to submit Reule's jury charge

Reule complains that "[t]he trial judge refused to present any jury charged [sic] submitted by Reule, and only presented those proposed by Financial Entities." Reule's sole citation is to the actual charge of the trial court. Reule does not identify a single proposed jury instruction she claims was refused[10] in error by the court. Were we to undertake, without proper citation, an independent review of all of Reule's numerous proposed jury instructions, those before trial and during trial, to glean which were proper submissions, supported by the evidence and the pleadings, we would be abandoning our role as neutral adjudicators and become an advocate for the appellant. *See Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied); *see also Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 198–99 (Tex. App.—Houston [14th Dist.] 2002, no pet.)

___

[9] Of these parties, only RLZ Investments is identified in the identity of parties and their counsel section of Reule's appellate brief.

[10] Even if not waived by failure to adequately brief the point, Reule's issue regarding the jury charge is not preserved as Reule has not identified how she complied with Texas Rule of Civil Procedure 276.

20

("Though Deutsch states in a conclusory manner that the trial court erred by refusing his questions regarding misrepresentation, breach of contract, and breach of fiduciary duty, as defenses to the Law Firm's contract claim, he does not cite or otherwise specify any refused question or questions that he alleges properly presented these purported defenses.").

This issue is overruled.

### 3. *Failure to submit "fair debt collection claims"*

Reule complains that "[t]he trial court would not allow Reule to discuss any fair debt collection claims, nor have a jury question or instructions regarding same." However, Reule has not provided any record support for her claim that the trial court refused to allow her to discuss her fair debt collection claims, or where she sought a jury question or instruction on these claims. She has thus failed to adequately brief this issue. *See* Tex. R. App. P. 38.1(i).

We overrule Reule's challenge to the trial court's failure to submit debt collection questions or instructions to the jury.

### 4. *Denial of Reule's JNOV regarding damages for medical costs*

Reule complains as follows:

The trial court erred in denying Reule's motion for a directed verdict (CR 1619-1668, 1713-1798), in granting final judgment, and denying her post-verdict motions to vacate and set aside the final judgment, for judgment notwithstanding the verdict, and for new trial because there is no evidence or insufficient evidence to support the jury's findings to an erroneously submitted question regarding damages.

Reule's citations are to her motion for JNOV, in its entirety, and her supplemental motion for JNOV. Reule does not identify the allegedly erroneous "question regarding damages" or the alleged error in such question. The gravamen of

21

Reule's discussion appears to be that she should have been awarded damages without regard to success on the merits of any claim. In fact, our review of the motion and the supplemental motion cited reflects that Reule asked the trial court to "disregard all the jury findings and sign a judgment notwithstanding the verdict that awards plaintiff her home, and additional damages for wrongful foreclosure, wrongful eviction, and Civil Practice and Remedies Code Section 12.002 damages."

We conclude that Reule's discussion of this issue does not provide the court with sufficient information to examine any alleged error; therefore any such error is waived by inadequate briefing. *See Goad v. Hancock Bank*, No. 14-13-00861-CV, 2015 WL 1640530, at *5 (Tex. App.—Houston [14th Dist.] Apr. 9, 2015, no pet.) (mem. op.) (holding that a "passing argument" that contains no substantive argument, analysis, or citation to the record or relevant authorities constitutes briefing waiver).

Accordingly, this issue is overruled.

### 5. *The post-trial order granting sanctions against Reule*

On June 24, 2013, following the trial of the cause, the trial court heard Bayview Loan's amended motion for sanctions, by which it sought monetary sanctions of $3,015 for Reule's conduct during pretrial and trial proceedings that resulted in nine hours of wasted time. The trial court granted the motion; however, the trial court sanctioned Reule only $900 "for interfering with the Court's ability to hear evidence and decide issues of law and fact in the trial of this matter."

At a September 3 hearing, the trial court revisited the sanctions issue and signed an amended order for sanctions giving Reule, as an alternative to paying $900, the option to "submit to the Court a written statement in her own

handwriting that states 100 times that, 'I will not waste the time of the Court, opposing counsel, jurors or court personnel.'" [11]  At no time during that hearing or since has Reule complained about the alternative sanction; instead, she simply asked the trial court to spell out exactly what she was expected to write in the 100 lines.

On appeal, Reule's complaint about being sanctioned consists of, in its entirety, the following:

> Defendant violated the court order sealing Appellant's documents on three separate occasions, refused to answer discovery, requiring 4 motions to compel. At no time whatsoever were the Financial Entit[i]es sanctioned. However, appellant, who is disabled and was sick the entire trial, was sanctioned for being disabled. The court has a double standard, huge infractions by opposing counsel are rewarded, while minor inf[r]actions by a pro se litigant are crucified. This was a common theme throughout the litigation. Opposing counsel got special treatment, wasn't required to comply with the rules or a court order, and Appellant was sanctioned for being sick and disabled.

> The imposition of sanctions was excessive and an abuse of discretion. The court was well aware of Appellant's disability, and did NOTHING TO ACCOMMODATE HER DISALITY [sic] AS REQUIRED BY THE AMERICANS WITH DISABILITY [sic] ACT. The court REFUSED to sanction Appellees in this case who had serious violations of a court order, and Texas Rules of Civil Procedure, Rule 21c. Publicizing Appellant's checks, with the account number, AFTER the court issued an order sealing those records, was deliberate, an abuse, harassing for which the court did nothing about. Appellant's motions for sanctions feel on deaf ears. Refusing to answer discovery resulting in four motions to compel, also fell on deaf ears. Refusing to apply Rule 193.6 man[da]tory  exclusion for failing

---

[11] The trial court did not reconsider the sanction in response to any request by Reule. Rather, as part of the hearing on entry of judgment, Bayview Loan complained that the sanction had not been paid and that the order contained no deadline by which to pay.  Reule did not object to the amended order during the hearing.  Reule's only complaint was that she was not required to pay the sanction while the case was on appeal.

23

to identify witnesses including experts, provide documents pertaining to their experts, and failure to timely disclose new legal theories. Appellees weren't even required to follow procedure in filing a 106 motion for leave. Yet, Appellant was sanctioned for being sick and disabled, and being disorganized because she suffers from Attention Deficient HyperActivity disorder. She was entitled to accommodations pursuant to the ADA.

A party should not be sanction[ed] for being sick and disabled. There was no good cause for the sanction issued against Appellant. The trial court invited Appellees to file a motion for sanctions which was completely inappropriate. The trial court should have sanctioned Appellees for repeated violations of court orders, and for failing to timely disclose expert witnesses, legal theories and ????

Reule's rambling "sanctions argument," even liberally construed, is insufficient for several reasons. Reule fails to cite a single case in support of this argument. She fails to cite to the record to support this argument, including any cite to the original or amended sanctions order or any of the hearings where the sanctions were discussed. She fails to mention or challenge the amended (live) sanctions order that provided an alternative to monetary sanctions. As such, she makes no mention of any difficulty with handwriting anywhere in her briefing. She fails to cite to any evidence of a disability or any instance in which she requested any accommodation for a disability or lodged any complaint about a sanction that fails to acknowledge a disability. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contention made, with appropriate citations to authorities and to the record."). And to the extent that Reule is complaining about some other failing in the trial court's exercise of discretion, the complaint is waived for failure to support it with analysis, citation to the record, citation to authority, or argument about why the sanction was inappropriate in light of her undisputed conduct. *See, e.g., Fox v. Alberto*, 455 S.W.3d 659, 668 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

24

Our dissenting colleague would disregard our briefing rules,[12] reach a thorny question of first impression that is not presented, and reverse the sanctions imposed. This "thorny issue" is whether our current framework for analyzing trial court sanctions sufficiently protects disabled litigants from being sanctioned for their disability, rather than their litigation conduct. Certainly, this is an important concern. But **no party to this appeal has raised or discussed this issue in any meaningful fashion**. The dissenting opinion even acknowledges that "[o]n this record, we have nothing that tells us whether the sanctioned trial behavior is disability-related." That is the point. It was Reule's burden to make a record and cite to that record in this court.

The dissent nonetheless would reverse on this inadequate record because the trial court might not have had the knowledge or expertise to determine whether Reule's sanctionable conduct was disability-related. The dissent is apparently proposing a new rule, one that either (a) prohibits a trial court sanctioning a litigant or lawyer who claims a disability or (b) requires that a trial court demonstrate, on the record, medical competence prior to sanctioning a single disabled litigant or lawyer. Either way, such a new rule is patently unworkable and all the more unworkable in this case.

Reule, a former paralegal, brought this lawsuit. Reule had five years to prepare for trial. Reule decided what witnesses and documents to use to meet her

---

[12] Notwithstanding our discretion in the area of briefing waiver, we must balance the rights of the parties in this endeavor. For example, where a party fails to adequately brief in an opening brief, but takes steps to cure the inadequacy by supplemental authorities and citations, we may consider the issue because the opposing party has an opportunity to respond. *See Elaazami v. Lawler Foods, Ltd.*, No. 14-11-00120-CV, 2012 WL 376687, at *6 (Tex. App.—Houston [14th Dist.] Feb. 7, 2012, no pet.) (mem. op.). But here, neither the appellant nor the appellees have supplied any citations to the record or legal authority on the issue of sanctions. Reaching this issue is not judicial liberal construction. It is judicial advocacy.

burden at trial. But, Reule resisted both traditional pretrial preparation and parity.[13] Reule wanted a jury trial, but repeatedly left the jury, the trial court, and the defendants waiting beyond the appointed hour because she "was running late." The record contains no suggestion that Reule's tendency to be tardy was "disability-based." Reule never asked the trial court for any reasonable accommodation for a disability, whether it be to start the proceedings later, hold telephone conferences, or stagger proceedings to permit days of rest—nothing. Similarly, Reule asked the jury to award mental anguish damages based upon disabilities, but she vehemently objected to being cross examined on those disabilities. The trial court was in the best position to decide whether Reule was attempting to use a disability as both sword and shield.

In short, while considering whether a disability prevented Reule from showing respect for the rules as well as the time of the trial court, opposing counsel, and the jury, the trial court was also entitled to consider whether a disability actually had been an impediment to Reule during pretrial and trial. It is unclear how the dissent would have a trial court balance the rights of a pro se

---

[13] Reule moved to strike the trial court's pretrial preparation order, stating:

> Plaintiff further objects on the grounds that the Court has required extensive trial preparation docket on a pro se litigant who cannot possibly comply based upon her disability, medical condition and it seems the court only does this to pro se litigants in an attempt to exclude vital evidence. There is [sic] over 2000 pages of documents that will need to be submitted during the trial. Plaintiff does not have the financial means to provide copies of all documents, doesn't have the physical means to go through all documents and make an exhibit list of over 2000 pages of documents, designate and mark them. And this has never been requested in the past. Only the new Judge, Judge Wesley Ward, who is obviously bias[ed] against pro se litigants, has made it impossible for a pro se party to get their case properly prepared for trial. Plaintiff is not ready for trial, cannot be ready for trial in light of the court's ridiculous trial scheduling order, and believe[s] the trial will take at least 3 weeks to present all evidence and witnesses.

The trial court denied the motion but allowed Reule to make the pretrial disclosures in any non-"fancy" format she chose.

plaintiff with disabilities against the rights of defending parties to manage their litigation costs or to discover and meet the evidence against them.

Finally, our dissenting colleague would reverse because any sanction that includes rote handwriting, even in the alternative, is an abuse of discretion as a matter of law. Reule did not complain of the handwriting sanction during the hearing at which it was imposed and, had she objected, the trial court would have been entitled to consider that Reule herself filed a **handwritten** "Motion to Conduct Discovery Prior to Entry of Judgement" that same day. The trial court would have been in the best position to decide whether Reule's argument was belied by Reule's own conduct—had Reule made a "handwriting" argument.

Reule must follow the rules or ask for relief from them; she may not simply disregard them. When Reule filed an appellate brief with this court that was substantially in excess of the permitted words, we enforced our appellate briefing rules, struck the brief, and ordered it redrawn. Rule 38.1 is important because it requires the appellant to inform the court of the basis for the relief sought. The rule is also important because it puts the appellee on notice of the error(s) claimed and the basis for such errors so they may adequately defend. In fairness to all parties, we must enforce the briefing rules—all of them. *See, e.g.*, *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (explaining that, although we must interpret our briefing rules reasonably and liberally, "[n]onetheless, parties asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law supports their contentions"); *Deutsch*, 97 S.W.3d at 199 ("A party asserting error on appeal bears the burden of showing that the record supports the contention raised, and of specifying the place in the record where matters upon which he relies or of which he complains are shown.").

27

For the foregoing reasons, this issue is overruled. We turn finally to those issues that Reule failed to preserve for our review.

## F. Preservation

Generally, to present a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion stating with sufficient specificity the grounds for relief sought and that the trial court ruled on the complaint, either expressly or implicitly. *See* Tex. R. App. P. 33.1(a); *see also In re A.L.S.*, 338 S.W.3d 59, 70 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Important prudential considerations underlie error preservation rules, such as conserving judicial resources by permitting trial courts the opportunity to correct error before an appeal proceeds; encouraging fairness among litigants by preventing a party from unfairly surprising his opponent on appeal by stating his complaint for the first time; increasing accuracy in judicial decision-making by giving lower courts the chance to first consider and rule on error; and providing the parties the chance to develop and refine their arguments so that courts of appeal may focus on and analyze the key issues. *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (citations omitted). Several of Reule's issues were not properly preserved for our review.

### 1. *Claim for quiet title*

Reule focuses some of her briefing on an alleged claim to quiet title. However, her live pleading contained in our record does not contain a claim to quiet title, nor has Reule pointed to any evidence or requested jury questions on such a claim. *See* Tex. R. Civ. P. 278 (providing that court "shall submit the questions, instructions and definitions . . . which are raised by the written pleadings and the evidence").

28

Accordingly, this issue presents nothing for our review and is overruled.

## 2. *Failure to apply New York law*

Reule complains of the trial court's refusal to apply New York law or any jury instructions on New York law. But her citations to the record do not support her contention that the trial court made any ruling on the applicable law. The record suggests, instead, that the trial court asked for cases that might show the difference between New York and Texas law, yet Reule continued to rely upon cases applying Texas law as well as New York law. The Mortgagees/Representatives urged that New York law does not apply. Reule does not cite and our review does not reveal any objection to the charge of the court on the basis that it failed to instruct or apply New York law. Absent a ruling, Reule has not preserved the alleged error for review. Tex. R. App. P. 33.1(a)(2).

We overrule this issue.

## 3. *Defendant's trial brief was untimely*

Reule complains that the untimely trial brief of the financial entities regarding Texas Civil Practice and Remedies Code section 12.002 ambushed her "without giving any notice or proper opportunity to respond." During presentation of their motions for directed verdict, the Mortgagees/Representatives provided the trial court with a brief regarding the applicability of Chapter 12 to mortgage assignments.[14] Reule had previously supplied the trial court with cases on Chapter 12, and these cases were discussed during the directed verdict hearing. When the trial court inquired whether Reule had any other cases to offer, Reule responded: "Other than what I've previously given you, no. I mean, not that I have right offhand." Reule did not object to the trial brief or seek a continuance or

---

[14] Reule has not provided any citation to our record for this brief.

postponement of the matters; she did not seek leave to submit a brief or more cases prior to the court's ruling. Accordingly, Reule has failed to preserve any complaint about the timing of the trial court's receipt of a trial brief. Tex. R. App. P. 33.1(a)(1)(A).

We thus overrule this issue.

### 4. *Violations of Reule's motions in limine*

Reule complains that the trial court permitted the Mortgagees/ Representatives to ask "specific questions relating to prior lawsuit[s]" despite granting Reule's motions in limine.[15] But a trial court's ruling on a motion in limine preserves nothing for appellate review. *See Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 91 (Tex. App.—Houston [14th Dist.] 2004, no pet.). And "[b]ecause a trial court's ruling on a motion in limine preserves nothing for review, a party must object at trial when the testimony is offered to preserve error for appellate review." *Id.*

The trial court, according to Reule, allowed the Mortgagees/Representatives to ask numerous questions regarding numerous prior lawsuits Reule had maintained that had nothing to do with the present case and were not relevant. Reule has failed to identify the actual questions and answers about prior lawsuits about which she complains or where she objected to such questions. Reule

---

[15] Although the trial court initially granted Reule's motions in limine, the trial court revisited that ruling. Specifically, Reule herself elicited testimony from her daughter about the stress she observed in connection with the foreclosure efforts. As a part of her claims for violations of Texas Civil Practice and Remedies Code section 12.002, Reule was seeking mental anguish damages. Following the aforementioned testimony, the Mortgagees/Representatives approached the bench and asked the trial court to permit questions about other lawsuits during the relevant time period to show other potential sources of her stress. The trial court stated, "I think they're entitled to question you about alternative causes of your anxiety." The trial court required the Mortgagees/Representatives to establish a proper predicate that Reule opened the door to the cross examination and that the prior lawsuits were relevant to the time period at issue. Thus, the trial court reversed its decision regarding the prior lawsuit subject matter.

provides a citation to the clerk's record for her motion in limine. Reule provides a citation to an entire volume of reporter's record containing a discussion of the limine ruling. However, Reule provides no citation to any portion of the record where she objected to the allegedly offending testimony.

Thus, this issue presents nothing for our review because Reule has failed to preserve error, and it is overruled. *See id.*

### 5. *"Tossing out" chain of title*

Reule complains that the "court error in tossing out the chain of title, and failing to allow an instruction on chain of title."[16] Reule does not identify where or how the trial court "tossed out" chain of title. Nor has she identified where she requested a jury question on "chain of title" and where such a question was refused. *See* Tex. R. Civ, P. 276; *see also Coates v. Coates*, No. 05-08-00440-CV, 2009 WL 679592, at *2 (Tex. App.—Dallas Mar. 17, 2009, pet. denied) (mem. op.) ("Appellants do not refer us to any place in the record where they drew the court's attention to their pretrial jury charge in any way, so the filing of that document preserved no error.").

Thus, she has failed to preserve this issue, and it is overruled.

---

[16] "Chain of title" has been defined as "[t]he successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title down to and including the conveyance to the present holder." *Reserve Petroleum Co. v. Hutcheson*, 254 S.W.2d 802, 806 (Tex. Civ. App.—Amarillo 1952, writ ref'd n.r.e.) (quoting *Having v. Thorne Inv. Co.*, 46 S.W.2d 329, 332 (Tex. Civ. App.—Amarillo 1932, no writ)). Reule does not cite and we do not find any authority for construing "chain of title" as an independent cause of action.

### III. Conclusion

Having overruled all of Reule's issues, we affirm the trial court's judgment.

/s/ Sharon McCally
   Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally (Frost, C.J., dissenting) (Boyce, J., concurring).