Ronan Dale SILCOTT, Petitioner,

v.

Bobby OGLESBY, Respondent.

No. C–5468.

Supreme Court of Texas.

Dec. 17, 1986.

Rehearing Denied Jan. 21, 1987.

Jerry Bain, Bain, Files, Allen and Caldwell, Tyler, for petitioner.

Trey Yarbrough III, Conner, Gillen & Yarbrough, Tyler, for respondent.

SPEARS, Justice.

This is a child abduction case. Ronan Silcott sued his son's maternal grandfather, Bobby Oglesby, alleging that Oglesby kidnapped Silcott's child. The jury found monetary damages for Silcott and the trial court rendered judgment on the verdict. The court of appeals reversed holding that a parent does not have a common law cause of action if someone abducts his child in violation of a custody order. 709 S.W.2d 45. We reverse the judgment of the court of appeals.

Ronan Silcott and Brenda Oglesby Silcott were married in 1974. In April 1977, Silcott adopted Michael Thomas Silcott, Brenda's child from a previous marriage. The couple was divorced on October 31, 1977. Ronan Silcott was appointed Michael's managing conservator. Brenda Silcott and her father, Bobby Oglesby, were named possessory conservators.

After the divorce, Silcott and Michael moved to Ohio. In December 1979, Bobby Oglesby (Oglesby) and Brenda Silcott (Brenda) violated the custody order by picking up Michael at his school in Ohio and taking him back to Texas without the knowledge or consent of Ronan Silcott. Brenda and Oglesby filed a motion in 1980 seeking the managing conservatorship of the child. The district court denied the motion and the decision was appealed.

In July 1981, Oglesby filed a motion asking that he alone be named managing conservator. He was given temporary custody until the resolution of his motion. On July 30, 1981, the court of appeals affirmed the trial court's order denying the 1980 modification motion. 620 S.W.2d 820. Oglesby and Michael did not appear at the August 3, 1981 modification motion hearing. All other parties were present.

Silcott's petition alleged that Oglesby kidnapped his grandson in violation of the custody order. The jury found that Oglesby retained possession of Michael in violation of the court order, that his taking Michael was an intentional and willful violation of the court order, and that his retained possession of Michael was the proximate cause of Silcott's damages. The jury awarded $100,000 actual damages to compensate Silcott for his out of pocket expenses incurred in attempting to locate Michael, for court costs, and for mental anguish and suffering. The jury also awarded $50,000 in exemplary damages.

The court of appeals reversed the trial court and rendered judgment for the defendant, Oglesby. The court of appeals

noted that this court has never expressly recognized a tort recovery of mental anguish damages against a person who interferes with a court ordered possessory interest in children. After this case was tried, the legislature enacted a statutory cause of action for interference with child custody. Tex.Fam.Code Ann. §§ 36.01–.08 (Vernon 1986). The court of appeals refused to adopt a similar common law remedy applicable to cases arising before the enactment of the statute, holding that public policy was already served by the statutory remedy. The court held that Silcott's original petition did not allege a cause of action recognized under the common law of this State.

■ The court of appeals incorrectly observed that Texas courts have never recognized a cause of action for child abduction. In *Gulf C. & S.F. Ry. Co. v. Redeker*, 67 Tex. 190, 2 S.W. 527, 528 (1886), this court held that a father has a tort cause of action when someone entices away or harbors his minor child. At the time of that decision, the only recoverable damages were the value of the services of the child for the duration of the abduction period. *Id.*

■ Our common law has developed considerably in the one hundred years since *Redeker*. The amount of money missing children could be expected to earn for the family is no longer the sole proper means of compensating parents for the absence of their children. As we noted in *Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex.1983), the real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort, companionship and society. The arguments for allowing damages for mental anguish in a child abduction case are also strong. First, the mental anguish experienced by parents when their child is abducted can be extremely intense. The child may remain missing for a long period of time with the parent's worry, uncertainty, and fear increasing daily. Second, allowing damages for mental suffering without the necessity for showing actual physical injury when the tort is willful or intentional is well established. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.1980); *Fisher v. Carrousel Motor Hotel, Inc.* 424 S.W.2d 627, 630 (Tex.1967). The jury found that Oglesby's abduction of Michael was willful and intentional.

The pleadings, proof, and jury charge in this case fit within the language of the Restatement (Second) of Torts, § 700 (1977) which provides:

> One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent.

Comment g to § 700 states:

> The parent can recover for the loss of society of his child and for his emotional distress resulting from its abduction or enticement. ... He is also entitled to recover for any reasonable expenses incurred by him in regaining custody of the child.

Additionally, a number of courts have recognized a cause of action for abduction of a child in circumstances similar to these. *See Fenslage v. Dawkins*, 629 F.2d 1107 (5th Cir.1980); *Adra v. Clift*, 195 F.Supp. 857 (D.Md.1961); *Armstrong v. McDonald*, 39 Ala.App. 485, 103 So.2d 818 (1958); *Rosefield v. Rosefield*, 221 Cal.App.2d 431, 34 Cal.Rptr. 479 (1961); *Wood v. Wood*, 338 N.W.2d 123 (Iowa 1983); *Brown v. Brown*, 338 Mich. 492, 61 N.W.2d 656 (1953); *Miller v. Monsen*, 228 Minn. 400, 37 N.W.2d 543 (1949); *Kipper v. Vokolek*, 546 S.W.2d 521 (Mo.Ct.App.1977); *McGrady v. Rosenbaum*, 62 Misc.2d 182, 308 N.Y.S.2d 181 (1970); *LaGrenade v. Gordon*, 46 N.C.App. 329, 264 S.E.2d 757 (1980).

■ The determination of the common law is left to the courts and often, the intermediate courts leave the extension of common law doctrines to the court of last resort. *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 791 (Tex.1967). At the time of Michael's abduction, interference

with child custody was a third degree felony. Tex.Penal Code Ann. § 25.03 (Vernon 1974). The fact that the legislature did not choose to create a civil cause of action by statute until 1983 does not prevent us from recognizing the existence of a common law cause of action. In fact, the legislative intent, as evidenced by the the prior criminal offense and the later statutory cause of action, is a persuasive reason why we should recognize a prior actionable tort for child abduction in violation of a custody order as a sound principle for our developing common law. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 427 (Tex. 1984).

In 1980, the Fifth Circuit predicted that this Court would follow the principles set forth in section 700 when given the opportunity to do so. *Fenslage v. Dawkins*, 629 F.2d 1107, 1109 (5th Cir.1980). A concurring justice advocated the adoption of the Restatement cause of action in *Marshall v. Wilson*, 616 S.W.2d 932, 934 (Tex. 1981) (Ray. J., concurring). We now apply the Restatement (Second) of Torts § 700, to the facts of this case. Section 700 will apply to cases tried before September 1, 1983. Sections 36.01–.08 of the Family Code provide a new cause of action in cases tried after September 1, 1983.

Oglesby asserts several cross points. First, he claims that there was no evidence that he abducted his grandson. He offered the following explanation for his disappearance on the day of the hearing on his motion to modify: That morning, Oglesby walked outside his home where two armed men in ski masks accosted him, tied him up, and threatened to kill him. The men later agreed to release Oglesby if he would withdraw a large sum of money from the bank and deliver it to them. Oglesby was then released, but after visiting the bank, he did not turn over the money to his abductors. Instead, he fled town in his van with $26,-000 in cash. Several days later, Oglesby brought the van back to his son's house because he feared the gunmen would trace it. However, he was not afraid that his son's family would be attacked when in the vehicle in the very town where the incident allegedly occured.

For the next year and a half, Oglesby remained in hiding along the Texas coastline. He did not produce one witness who could testify concerning his whereabouts or traveling companions during that time. Oglesby did not call or contact his attorney, daughter, son, or anyone while he was "hiding out." He did not report the incident with the gunmen until almost two years after it allegedly occurred. At one point, Oglesby returned to his home city to execute a power of attorney so that his son could manage his business affairs, but did not see or talk to his son at that time. Although the evidence indicated that Oglesby had been extremely concerned about his grandson's welfare throughout the previous years, he did not see, call, or write Michael while he was hiding out, nor did he ask any of the family about Michael.

The circumstantial evidence in this case is strong. Oglesby and the boy disappeared just after the 1980 modification motion denial was upheld on appeal. Oglesby admitted that he had previously abducted Michael in violation of a court order. He had tried every available legal strategy to obtain custody of his grandson. The jury was free to believe or disbelieve Oglesby's account of his actions and companions during the time between his disappearance and the filing of this lawsuit. There was certainly some evidence to support the jury's finding that Oglesby abducted his grandson in violation of a court order.

In his second cross point, Oglesby argues that the trial court's bias against him and his attorney merits reversal of this cause. A review of the record reveals that the trial court admonishments in this case were appropriate and no stronger than necessary. Additionally, the judge's strongest remarks were made out of the presence of the jury. Here, no showing of impropriety coupled with probable prejudice and rendition of an improper verdict is made by Oglesby. *Texas Mexican R. Co. v. Bunn*, 264 S.W.2d 518, 527 (Tex.Civ.App.—San Antonio 1953, writ ref'd n.r.e.).

Oglesby's final cross point complains of the trial court's ruling on the admissibility of evidence. First, he complains that the trial court improperly prevented the jury from learning that Michael was Silcott's adoptive rather than natural son. The trial court's refusal was proper both as an attempt to avoid injecting confusing collateral issues into the proceedings, Tex.R.Evid. 403, and in light of the recognized coequal status of adoptive and natural children in Texas. Tex.Fam.Code Ann. § 16.55 (Vernon 1986); Tex.Prob.Code Ann. § 40 (Vernon 1980). *See also Hoch v. Hoch*, 140 Tex. 475, 168 S.W.2d 638 (Tex. 1943). Second, the trial judge excluded evidence of Oglesby's motion to modify the custody decree and petition for temporary orders. Oglesby argues that this evidence was relevant to show he attempted to obtain custody of his grandson by legal means. Any error in the exclusion of this evidence was harmless because Oglesby's legal attempts to obtain custody were adequately brought out at trial. Lastly, Oglesby contends that the trial court erred in excluding several photographs portraying injuries to the body of the child. Oglesby testified that the photos were taken by the boy's mother on one of Michael's visits, but he could not produce any testimony linking the cause of the injuries to Silcott. The trial court properly sustained the objection that the photos were not relevant.

We reverse the court of appeals judgment and remand this cause to that court for determination of Oglesby's factual sufficiency point. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986).