Opal WEIRICH and Ralph Noel
Weirich, Appellants,

v.

Bonnie Gail WEIRICH, et al.,
Appellees.

No. 04–89–00176–CV.

Court of Appeals of Texas,
San Antonio.

July 31, 1990.

Rehearing Denied Sept. 21, 1990.

**514**

Douglas D. Hearne, Nancy E. Green, Hearne, Knolle, Lewallen, et al., Austin, Thomas Black, San Antonio, for appellants.

Larry J. Doherty, Doherty & Williamson, John F. Nichols, Warren Cole, Piro, Nichols & Lilly, Houston, Eileen D. Flume, Sue M. Hall, Law Office of Sue M. Hall, San Antonio, for appellees.

Before CADENA, C.J., and PEEPLES and CARR, JJ.

## OPINION

CARR, Justice.

This is a parental kidnapping of children case wherein Bonnie Gail Weirich Edwards, individually and as managing conservator of two minor children, Charles Jacob Weirich (Jake) and Jennifer Gail Weirich (Jenny), alleged that the children's father, Ralph Noel Weirich, kidnapped the children on February 25, 1982, and thereafter concealed them and that Opal Weirich participated in the kidnapping and concealment of the children.[1] Bonnie sued the defendants under numerous common law theories and under the provisions of TEX.FAM.CODE

ANN. § 36.02 (Vernon 1986). The trial court rendered judgment, based upon the jury's findings, that Bonnie recover the sum of $5,947,684.89, including pre-judgment interest, from Opal and Ralph, jointly and severally. Opal and Ralph have filed this appeal.

■ This opinion deals only with the merits of Opal's appeal for the reason that after Ralph perfected his appeal, he informed this court that he did not intend to file a brief as a tentative settlement of his liability had been reached. His appellant's brief was due July 26, 1989. He filed neither a brief nor a motion for extension of time to file his brief. Pursuant to TEX.R. APP.P. 74(*l*), we dismiss Ralph's appeal for want of prosecution.

As to Opal's appeal, we reverse and render judgment for Opal and against appellees for the reasons stated in this opinion.

The record reflects the following:

Bonnie married Ralph on January 15, 1972, and they had two children, Jake and Jenny. Opal is Ralph's mother. On February 1, 1982, Bonnie filed her original petition for divorce and obtained a temporary restraining order prohibiting Ralph from, among other things, "interfering in any way with [Bonnie's] possession of the minor children." Ralph was served with the temporary restraining order on February 8, 1982.[2] The temporary restraining order was extended on February 9, 1982, and a hearing was had on February 12, 1982, at which time the trial court granted temporary orders appointing Bonnie temporary managing conservator of the children and enjoining Ralph from interfering in any way with Bonnie's possession of the children. The temporary order granted on February 12, 1982, was signed by the trial court on February 26, 1982. The temporary restraining order was extended again on February 19, 1982.

---

1. For purposes of this opinion, the parties will be referred to by first name, with one exception: "appellees" will refer to Bonnie, individually and as managing conservator of Jake and Jenny.

2. It is undisputed that Opal was never "served" with the temporary restraining order.

On February 25, 1982, Ralph took the children from their school and disappeared with them for almost seven years. On April 28, 1982, Bonnie was granted a final decree of divorce from Ralph which appointed Bonnie managing conservator of the children and Ralph possessory conservator of the children without visitation rights.

On March 3, 1982, Opal was served with process in this lawsuit. The petition alleged three causes of action against Opal and Ralph: common law interference with child custody and negligent and intentional infliction of emotional distress. Prior to the setting of the case for trial for December 5, 1988, appellees amended their petition twice: first, on November 7, 1986, for the purpose of increasing their damages against Opal and Ralph on the same three causes of action from $300,000 to $2,500,000 and, second, on February 13, 1987, to include in the suit other defendants not parties to this appeal. On November 28, 1988, within seven days of trial, appellees filed their Third Amended Petition alleging numerous additional causes of action and damages of $474,000,000. After Opal's plea in abatement, special exceptions, motion to strike and motion for continuance (based upon surprise) were overruled by the trial court, the case went to trial before a jury. Based upon the jury's findings that Opal had committed interference with child custody, negligent interference with family relationship and negligent infliction of emotional distress, the trial court entered judgment against her.

There are three dispositive issues presented in this appeal: (1) in the context of the facts of this case, do common law causes of action exist in Texas for either negligent interference with a family relationship and/or negligent infliction of emotional distress, (2) if, prior to appellees'

filing of their Third Amended Petition in 1988 alleging a statutory cause of action for interference with child custody under TEX.FAM.CODE ANN. § 36.02(a) (Vernon 1986), appellees were required to give Opal statutory notice as required by TEX.FAM. CODE ANN. § 36.07 (Vernon 1986), can Opal be held civilly liable under section 36.02(a) without such prior section 36.07 notice, and (3) does the record reflect any evidence to support the jury's finding that Opal interfered with child custody under TEX.FAM.CODE ANN. § 36.02(c) (Vernon 1986) by aiding or assisting "in conduct for which a cause of action is authorized" by TEX.FAM.CODE ANN. § 36.02(a) (Vernon 1986). We answer all three issues in the negative.

■■■ While we reject Opal's argument that the enactment of TEX.FAM.CODE ANN. § 36.02 (Vernon 1986) superseded any common law cause of action,[3] we agree that Texas does not recognize common law causes of action for negligent interference with family relationship or negligent infliction of emotional distress within the context of the facts this case presents, for the reasons set out below.

The tort which is the basis of this lawsuit against Opal is the abduction and concealment of the children. Prior to the enactment of Chapter 36 of the Texas Family Code, the creation of a civil cause of action for child abduction began in the common-law with RESTATEMENT (SECOND) OF TORTS § 700 (1977), which provides:

[o]ne who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent.

**3.** Opal's reliance on *Silcott v. Oglesby,* 721 S.W.2d 290 (Tex.1986) is misplaced. In *Silcott,* the Supreme Court stated that "Section 700 will apply to cases tried before September 1, 1983. Sections 36.01–.08 of the Family Code provide a new cause of action in cases tried after September 1, 1983." *Id.* at 293. It is clear to us that this *Silcott* language does not stand for the proposition that enactment of TEX.FAM.CODE ANN.

§ 36.06 (Vernon 1986) expressly supersedes an available common law action. Moreover, TEX. FAM.CODE ANN. § 36.06 (Vernon 1986) expressly permits any other available civil remedy. Accordingly, we do not view enactment of Chapter 36 of the Family Code as a derogation of other available common law remedies. *See Smith v. Smith,* 720 S.W.2d 586, 600 (Tex.App.— Houston [1st Dist.] 1986, no writ).

### Negligent Interference with Family Relationship

It is clear to us from RESTATEMENT (SECOND) OF TORTS § 700 (1977) that only an *intentional* interference with the relationship of the parent and child is actionable and after diligent research, we have found no reported cases in Texas recognizing a cause of action for *negligent* interference with a family relationship in the context of a child abduction case.

Appellees erroneously argue that *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex. 1983), creates a cause of action for negligent interference with family relationship. *Sanchez* simply concerns the measure of damages to be afforded under a cause of action created by the wrongful death act. *Sanchez* does not create a new cause of action, and it is inapposite to this case.

Accordingly, we hold no cause of action for *negligent* interference with a family relationship exists in Texas in the context of a child abduction case, and grant Opal's eighth point of error.

### Negligent Infliction of Emotional Distress

█ It is well established that a common law cause of action for the tort of child abduction exists in Texas, and that under such a cause of action, damages for emotional distress to the parent are recoverable. *See* RESTATEMENT (SECOND) OF TORTS § 700 comment g (1977). In *Silcott v. Oglesby,* 721 S.W.2d 290, 292 (Tex. 1986), a child abduction case, our Supreme Court allowed damages for mental suffering without the necessity of showing actual physical injury because the tort was willful and intentional.

█ While Texas does recognize a cause of action for *intentional* infliction of emotional distress under RESTATEMENT (SECOND) OF TORTS § 46 (1977), *Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 944 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.), here we are presented with the issue of whether Texas recognizes an independent cause of action for *negligent* infliction of emotional distress in the context of a child abduction tort. After diligent research, we have found no authority in Texas recognizing such a cause of action. Accordingly, we hold Texas does not recognize an independent cause of action for negligent infliction of emotional distress in the context of a child abduction case, and we therefore grant Opal's twenty-second point of error.

### Statutory Civil Liability for Interference With Child Custody

Statutory civil liability for interference with child custody is contained in Chapter 36 of the Texas Family Code, which became effective September 1, 1983, and which, insofar as the issues presented here are concerned, provides in TEX.FAM.CODE ANN. §§ 36.02 and 36.07 (Vernon 1986), as follows:

§ 36.02. Liability for Interference With Child Custody

(a) A person who takes or retains possession of a child or who conceals the whereabouts of a child in violation of a court order that provides for possessory interests in a child may be liable for damages to the person who is denied a possessory interest in the child.

(b) The taking or retention of possession of a child or the child's concealment is a violation of a court order if it occurs at any time during which a person other than the person committing the act is entitled under the court order to a possessory interest in a child.

(c) Each person who aids or assists in conduct for which a cause of action is authorized by Subsection (a) of this section is jointly and severally liable for damages.

(d) A person who was not a party to the suit in which a court order was issued providing for possessory interests in a child is not liable under this chapter for a violation of the court order unless the person at the time of the violation:

(1) had actual notice of the existence and contents of the order; or

(2) had reasonable cause to believe that the child was the subject of a

court order and that his actions were likely to violate the order.

§ 36.07. Notice

(a) As a prerequisite to the filing of suit under this chapter, a person who has been denied a possessory interest in a child in violation of a court order shall give written notice of the specific violation of the order to the person violating the order.

(b) The notice shall be by certified or registered mail, return receipt requested, to the last known address of the person alleged to be in violation of the order.

(c) The notice shall include a statement of the intention of the sender to file suit no less than 30 days after the date of mailing unless the order is promptly and fully complied with.

(d) Notice need not be given to persons aiding or assisting in conduct for which a cause of action is authorized under this section.

(e) Evidence that notice has been given under this subsection may be introduced in any proceeding under this section.

### Section 36.02(a) Cause of Action

■ First, it is clear that TEX.FAM. CODE ANN. § 36.02 (Vernon 1986) provides for two separate causes of action: a "violation of court order" cause of action under section 36.02(a) and an "aids or assists" cause of action under section 36.-02(c). Second, it is clear that while TEX. FAM.CODE ANN. § 36.07(a) (Vernon 1986) notice is not required in a section 36.02(c) cause of action, it is a statutory prerequisite to the filing of a section 36.02(a) cause of action. The record reflects that appellees pled both section 36.02(a) and section 36.02(c) causes of action against Opal. The record further reflects that it is undisputed that *no* section 36.07(a) notice was given by appellees to Opal prior to appellees' filing of their Third Amended Petition on November 28, 1988, insofar as her section 36.02(a) cause of action was concerned. Lastly, the record reflects that Opal has properly preserved her error.

■ The issue presented by Opal's sixth point is whether the trial court erred when

it instructed the jury that it could find that she interfered with child custody if it found that she violated a court order when it is undisputed that she never received the required section 36.07(a) notice. We answer in the affirmative.

The trial court's jury charge fit within the language of both the section 36.02(a) and section 36.02(c) causes of action. The trial court instructed the jury that it could find Opal interfered with child custody if it found any of the elements contained in section 36.02, i.e., (1) if Opal either violated a court order under subsection (a) by taking, retaining or concealing the children, or (2) if Opal aided or assisted in the violation of a court order under subsection (c). Since Opal cannot be held civilly liable for directly violating a court order under section 36.02(a) because of lack of section 36.-07(a) notice, we hold that it was error to so instruct the jury and grant Opal's sixth point of error.

### Section 36.02(c) Cause of Action

This brings us to Opal's eighteenth point of error, which challenges the legal and factual sufficiency of the evidence to support the jury's finding that she interfered with child custody under TEX.FAM.CODE ANN. § 36.02(c) (Vernon 1986), which provides that

[e]ach person who aids or assists in conduct for which a cause of action is authorized by Subsection (a) of this section is jointly and severally liable for damages.

■ When addressing a no evidence point, we must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex. 1986); *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985). When reviewing an insufficient evidence point, we consider and weigh all the evidence; we set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985).

After reviewing the entire record, we find that there is no evidence and insufficient evidence to support the jury's finding that Opal aided or assisted in conduct for which a cause of action is authorized under section 36.02(a).

There are two statutorily-defined elements of a section 36.02(a) cause of action: (1) occurrence of certain prohibited conduct and (2) that that conduct is being done in violation of a court order that provides for possessory interests in a child. The "conduct" referenced in section 36.02(c) is described in section 36.02(a). The section 36.-02(a) conduct made the basis of this suit is the February 25, 1982, "taking" and thereafter "retaining" and "concealing" of the two children by Ralph. Here, appellees' section 36.02(c) cause of action alleges that Opal "aided or assisted" Ralph in the taking, retaining and concealing of the children. Keeping in mind the foregoing, we shall discuss our review of the evidence in the record as it pertains to each type of section 36.02(a) conduct alleged in relationship to the "court order" in existence[4] at the time of the section 36.02(a) conduct in question.

### "Taking" of Children

The record reflects that the "taking" of the children by Ralph made the subject of this lawsuit occurred on February 25, 1982. The record further reflects that the only "court order" in effect on that date was a Temporary Restraining Order[5] which was directed only to Ralph and which prohibited him from, among other things, "interfering in any way with [Bonnie's] possession of the minor children." The record establishes that the TRO was served upon Ralph February 8, 1982, and the evidence is undisputed that the TRO was never served upon Opal. While TEX.R.CIV.P. 683 provides that a TRO is binding on those persons in active concert or participation with a party (here, Ralph) who receive actual notice, there is no evidence in the record that Opal received actual notice of the TRO prior to the taking of the children by Ralph on February 25, 1982.

■ Our review of all of the evidence in the record shows that Opal denied having any notice or knowledge of the TRO prior to the taking of the children on February 25, 1982. The fact that Bonnie may have written Opal a letter after Christmas 1981 but prior to the issuance of the February 1982 TRO saying that she (Bonnie) and Ralph could "not make a go of it anymore" does not give Opal notice of the existence or contents of a subsequently-issued TRO. Likewise, the fact that Bonnie informed Opal by telephone on February 4, 1988, that she (Bonnie) "had filed for a divorce" does not give Opal notice of the existence or contents of the TRO in question.

We therefore find that the above evidence is no evidence and insufficient evi-

---

4. Appellees argue that there are four "court orders" which affect the outcome of this appeal: (1) the February 1, 1982, Temporary Restraining Order, (2) the February 26, 1982, Temporary Orders, (3) the March 11, 1982, order contained in trial judge's oral statements at a March 11, 1982, hearing, and (4) the April 20, 1982, Final Decree of Divorce. After reviewing the March 11, 1982, trial judge's oral statements contained in the record, we hold that the same does not constitute a "court order" for the reason that such statements are advisory only. Further, we note that the temporary orders in this case were issued on February 26, 1982, and were in effect until April 28, 1982, when the Final Decree of Divorce was granted. The evidence shows that the taking of the children occurred on February 25, 1982, prior to the issuance of the temporary orders and any alleged "aiding or assisting" by Opal in concealment of the children occurred in 1983 and 1985 after the temporary orders had

expired. Therefore, we find that the only two "court orders" that were in effect at the time of Opal's alleged section 36.02(a) conduct were the February 1, 1982, Temporary Restraining Order as it pertains to appellant's "aiding and assisting" in the "taking" of the children and the April 28, 1982, divorce decree as it pertains to Opal's "aiding or assisting" in the "concealment" of the children.

5. As a result of our finding that Opal had no notice of the Temporary Restraining Order prior to the February 25, 1982, taking of the children, we do not reach the issue presented in Opal's brief of whether the temporary restraining order constitutes a "court order that provides for possessory interests in a child" within the meaning of section 36.02 and Opal's accompanying contention that Bonnie does not acquire possessory rights to the children as a result of the TRO.

dence to establish that Opal had notice of the existence or contents of the TRO prior to the February 25, 1982, taking of the children. Without such notice or knowledge, Opal, as a matter of law, could not have been found to have violated the TRO. *See* TEX.R.CIV.P. 683.

### *"Retaining" and "Concealing" of Children*

The record reflects that on March 3, 1982, Opal was served with process in this lawsuit. The record further reflects that on April 28, 1982, Bonnie was granted a final decree of divorce from Ralph which appointed Bonnie managing conservator of the children and Ralph possessory conservator of the children without visitation rights.

▆ The evidence is undisputed that after the February 25, 1982, "taking" of the children by Ralph, the children were thereafter retained and concealed from Bonnie for the next six years and ten months. The evidence further shows that during this concealment period, the children were with Ralph. The only evidence that Opal saw the children after the February 25, 1982, taking is her own testimony concerning two brief visits with the children in Johnson City at Christmas 1983 and Thanksgiving 1985. Opal testified that during Christmas 1983, Ralph and the children arrived at her house at three or four o'clock on Friday morning and left early Sunday afternoon; that she had no "prior warning or notice" of the visit; that she did not know where they had come from; that she gave them only food and shelter; that she did not give them financial assistance or any other type of aid; that she did not attempt to conceal their identity or whereabouts during the visit by, for example, turning off the house lights; and that she never told or suggested to the children that they not contact their mother. Opal further testified that she had "seen" the children "during the Thanksgiving holidays of 1985" and had not seen them since that time; that on each of the two or three occasions that she had seen Ralph, she would "plead with him" to "bring the kids back"; that it had been

unpleasant and had caused her grief that she had not been able to see Ralph and her grandchildren; and that, as a result of his actions, Ralph had put her through "misery."

The issue presented is whether the above evidence constitutes any evidence or sufficient evidence that Opal aided or assisted Ralph in retaining or concealing the children after the February 25, 1982, taking.

The terms "retain," "conceal," "aid," and "assist" are not defined in Chapter 36 of our Texas Family Code. When words used in a statute are not defined in that statute, then such words shall be construed according to common usage. TEX.GOV'T CODE ANN. § 311.011 (Vernon 1988). BLACK'S LAW DICTIONARY 63, 111, 1183, 261 (5th ed. 1979) defines "aid" as "to support, help, assist or strengthen"; "assist" as "to lend encouragement," "to contribute effort in the complete accomplishment of an ultimate purpose intended to be effected by those engaged"; "retain" as "to continue to hold," "to keep"; and "conceal" as "to hide or secrete." Applying these definitions of aid, assist, retain and conceal to the evidence in the record, we hold that the above-referenced evidence is no evidence and insufficient evidence that Opal aided or assisted Ralph in retaining or concealing the children after the February 25, 1982, taking by Ralph.

For the above reasons, we grant Opal's eighteenth point of error.

### SUMMARY

In summary, under Opal's eighth point, we hold no cause of action for *negligent* interference with a family relationship exists in Texas in the context of a child abduction case; under Opal's twenty-second point, we hold Texas does not recognize an independent cause of action for *negligent* infliction of emotional distress in the context of a child abduction case; under Opal's sixth point, we hold that the trial court erred in instructing the jury that it could find Opal interfered with child custody if it found any of the elements contained in section 36.02 in view of our holding that Opal cannot be held civilly liable for direct-

ly violating a court order under a section 36.02(a) cause of action due to the undisputed fact of lack of section 36.07(a) notice; under Opal's eighteenth point, we hold that there is no evidence and insufficient evidence to support the jury's finding that Opal interfered with child custody under section 36.02(c) by aiding or assisting in conduct for which a cause of action is authorized by section 36.02(a).

In view of our granting Opal's points of error six, eight, eighteen, and twenty-two, we need not address her remaining points of error. TEX.R.APP.P. 90(a).

Accordingly, we reverse the judgment of the trial court as it pertains to Opal and render judgment that appellees take nothing by their suit against Opal.

We dismiss Ralph's appeal for want of prosecution. TEX.R.APP.P. 74(*l*).