**Motion to Dismiss Denied, Affirmed, and Memorandum Opinion filed January 29, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00324-CV

---

### JESSE ANDREW LOPEZ, Appellant

### V.

### SHARI GRACE OCCHIOGROSSO, Appellee

---

**On Appeal from the 328th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 17-DCV-240212**

---

## M E M O R A N D U M   O P I N I O N

Appellant Jesse Andrew Lopez challenges the trial court's 30-year protective order prohibiting him from, *inter alia*, contacting Shari Grace Occhiogrosso.[1] Jesse contends that the trial court erred because: (1) he was subjected to unlawful selective prosecution; (2) he was subjected to unconstitutional punishment; (3) the trier of fact

---

[1] *See* Tex. Code Crim. Proc. arts. 7A.01(a)(1)-(2), 7A.07(a); Tex. Fam. Code §§ 82.001-.002.

was exposed to prejudicial outside influences; (4) the trial court lacked jurisdiction; (5) Texas Code of Criminal Procedure Chapter 7A is unconstitutionally vague; (6) the trial court deprived him of a fair criminal trial; (7) his son's alleged outcry statement was improperly excluded from evidence; (8) he was subjected to a conspiracy between the State, his former defense counsel, and the trial court which "remove[d] the fundamental fairness of both the protective order hearing and the criminal case"; (9) the trial court excluded certain exhibits; (10) the trial court prohibited Jesse from calling witnesses; and (11) Chapter 7A is unconstitutional as applied to him.[2]

After careful review of the briefing and the record, we conclude that Jesse's issues either lack merit or were inadequately briefed. We affirm the trial court's protective order.

## Background

We summarize the relevant factual background based on the record.[3] Jesse and Shari had a ten-year, on and off relationship, which produced two children. During the relationship, Jesse physically and verbally abused Shari, but the two attempted to stay together for their children's sake. In the summer of 2016, Jesse and Shari agreed that Shari would be the sole managing conservator of the children and that Jesse would have supervised visitation only. The judge of the 328th Judicial

---

[2] Jesse also filed a "motion for dismissal/reversal for want of prosecution," which we carried with the case. In this motion, Jesse asks us to reverse the underlying protective order because the State, on appellee's behalf, has failed to "adequately work this case." We deny the motion.

[3] An appellant's brief "must state concisely and without argument the facts pertinent to the issues or points presented" and be supported by record references. Tex. R. App. P. 38.1(g). Thus, we do not consider Jesse's many factual assertions that do not appear in our record. *Fox v. Alberto*, 455 S.W.3d 659, 668 n.5 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

District Court of Fort Bend County signed an order in a suit affecting the parent-child relationship in August 2016 memorializing this agreement.

Several months later, Jesse appeared unannounced at Shari's residence, banged on the window, and demanded to see the children. Shari called the police, and the police issued a criminal trespass warning to Jesse. Jesse had no further contact with Shari until the incident giving rise to the present appeal.

On the afternoon of March 4, 2017, Shari returned home from the gym and found Jesse inside her apartment without her permission. Jesse said he wanted answers and that they needed to talk. Shari asked Jesse to leave but he refused. She tried to leave, but he held the door shut and took away her cell phone. Jesse led Shari by the arm into her bedroom, where he forced himself on her sexually for several hours and would not allow her to leave. Jesse paused intermittently to pose questions and threatened to kill her, their children, and her mother. When Shari resisted, Jesse slapped her and threatened to kill her if she did not stop resisting. Jesse brought a backpack that contained duct tape, and he told Shari he would take her into the woods.

According to Shari, her mother called her cell phone during the assault. Jesse allowed Shari to answer the call on speaker. Sensing something was wrong, Shari's mother said she would call the police immediately. Jesse then allowed Shari to dress and said he would kill her another day. As Shari was dressing, Jesse went to the kitchen to grab a knife. When Shari saw Jesse holding the knife, she left her apartment and crossed the street to her grandparents' apartment. Shari also called the police and officers arrived shortly thereafter. She went to a nearby hospital for a sexual assault examination.

Shari applied for a protective order against Jesse under Chapter 7A of the Texas Code of Criminal Procedure or Chapter 85 of the Texas Family Code. During

the evidentiary hearing on April 10, 2017, Shari testified that she believed Jesse planned to harm her, her children, her family, and even his family. She expressed concern that Jesse knew where to find her and that he could use their children to lure her somewhere he could hurt her.

Detective Justin Harris of the Fort Bend County Sheriff's Office ("FBCSO") also testified. Harris was assigned to investigate the incident and arrived at the scene shortly after Shari reported the assault. Harris testified that officers found Jesse near Shari's apartment and transported him to the FBCSO. Jesse possessed a backpack, which contained duct tape and trash bags. Harris spoke with Shari, who appeared "upset," "visibly shaking," and "scared." Harris collected bedsheets, towels, and clothing to be processed for DNA testing. He attempted to interview Jesse at the FBCSO, but Jesse refused to answer questions about what happened. Instead, Jesse claimed that Shari's father had sexually assaulted his and Shari's son, J.L., in a separate incident. Jesse provided some details, and Harris told Jesse he would investigate the allegations as a separate incident.

Harris contacted Child Protective Services ("CPS") about Jesse's allegations. A forensic interviewer with the Children's Advocacy Center in Fort Bend County interviewed J.L., and Harris observed the interview through a closed-circuit television. J.L. made no outcry concerning any abuse during the interview. CPS subsequently closed the investigation.

Jesse testified that no facts or evidence supported Shari's claim that he sexually assaulted her. He stated, "She said I did. I said I didn't. It's that plain and simple." He admitted that he had served time in prison for a felony theft offense and that he had been convicted for marijuana use. However, he insisted that he does not drink and that he has "never struck a woman" in his life. He further insisted that he

4

was "in great sound mind," knew right from wrong, and understood what rape means.

After considering the evidence, the trial court found that family violence had occurred and was likely to occur again, and that Shari was the victim of sexual assault. Based on these findings, the trial court prohibited Jesse from:

- Committing acts of violence against [Shari];
- Doing any act that is intended to result in physical harm, bodily injury, assault, or sexual assault against [Shari];
- Communicating in a threatening or harassing manner with [Shari];
- Communicating a threat through any person to [Shari];
- Directly communicating in any manner with [Shari] except through an attorney or a person appointed by the court;
- Harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal that is possessed by [Shari];
- Going to or near, or within 200 yards of, any location where [Shari] is known by [Jesse] to be and . . . remaining within 200 yards after [Jesse] becomes aware of [Shari]'s presence;
- Going to or near the residence, place of employment or business or school of [Shari] . . . ;
- Coming within 200 yards of [Shari] except for the purpose of attending a court hearing;
- Engaging in conduct directed specifically toward [Shari], including following [Shari], that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass [Shari]; [and]
- Possessing a firearm or ammunition . . . .

The trial court also ordered Jesse to engage in sexual assault counseling. Jesse timely appealed.

5

## Protective Orders

The protective order is based on both Texas Code of Criminal Procedure Chapter 7A and Texas Family Code Chapter 85. Texas Code of Criminal Procedure Chapter 7A allows victims of sexual assault and other specifically identified offenses to apply for a protective order against the alleged offender. *See* Tex. Code Crim. Proc. arts. 7A.01(a)(1)-(2), 7A.07(a). If, after a hearing, a court finds "reasonable grounds to believe that the applicant is the victim of sexual assault," the court "shall issue a protective order . . . ." *Id.* art. 7A.03. The trial court may order the alleged offender to take specific actions the court determines are "necessary or appropriate to prevent or reduce the likelihood of harm to the applicant or a member of the applicant's family or household" or prohibit the alleged offender from engaging in certain conduct. *Id.* art. 7A.05(a). The protective order may be effective for the duration of the lives of the offender and victim or for any shorter period stated in the order. *Id.* art. 7A.07.

Similarly, the Texas Family Code permits family violence victims to apply for a protective order. *See* Tex. Fam. Code §§ 82.001-.002. "A court shall render a protective order . . . if the court finds that family violence has occurred and is likely to occur in the future." *Id.* § 81.001. "Family violence" includes sexual assault of a family member or of a person with whom the actor is engaged in a "continuing relationship of a romantic or intimate nature." *Id.* §§ 71.004(1); 71.0021(a), (b). Finally, "family" includes individuals who are parents of the same child without regard to marriage. *Id.* § 71.003.

**Analysis**

## A. Jurisdiction

We first address Jesse's challenge to the trial court's subject-matter jurisdiction over the 7A protective order proceedings. Jesse contends that the trial court lacked jurisdiction to enter a protective order against him because no criminal judgment adjudicates him guilty of the offenses alleged in the protective order application. We conclude the trial court had subject-matter jurisdiction.

Neither Chapter 7A of the Code of Criminal Procedure nor Chapter 85 of the Family Code require that, before a protective order may be entered, a criminal conviction be obtained. *See* Tex. Code Crim. Proc. arts. 7A.01-.07; Tex. Fam. Code §§ 85.001-.065. Instead, a protective order pursuant to Chapter 7A of the Code of Criminal Procedure may be filed in:

(1) a district court, juvenile court having the jurisdiction of a district court, statutory county court, or constitutional county court in:
  (A) the county in which the applicant resides;
  (B) the county in which the alleged offender resides; or
  (C) any county in which an element of the alleged offense occurred; or

(2) any court with jurisdiction over a protective order under Title 4, Family Code, involving the same parties named in the application.

Tex. Code Crim. Proc. art. 7A.01(b).

This proceeding was conducted in the 328th District Court of Fort Bend County, which is a dedicated district court. *See id.* The alleged offense in this case occurred in Fort Bend County. *See id.* As noted above, Jesse and Shari previously filed a suit affecting the parent-child relationship in the 328th District Court. *See id.* The trial court properly exercised jurisdiction over Shari's application for a

protective order. Jesse's jurisdictional complaint is without merit, and we overrule it.

## B. Sufficiency

Although Jesse does not specifically articulate a challenge to the sufficiency of the evidence in the issues presented section of his brief, he contends throughout the body of the brief that neither evidence nor credible evidence supports the protective order. In an abundance of caution, we construe Jesse's brief as raising legal and factual sufficiency challenges and therefore consider the sufficiency of the evidence to support the order.[4]

When the trial court is the factfinder, such as when it determines whether to issue a protective order, we review the evidence supporting the protective order under both legal and factual sufficiency standards. *Shoemaker v. State for Prot. of C.L.*, 493 S.W.3d 710, 714-15 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). In a legal sufficiency review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *Id.* at 715 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "'If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue.'" *Id.* (quoting *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied)). In reviewing for factual sufficiency, we consider all

---

[4] We construe pro se briefing liberally to reach appellate issues on the merits, where possible. *Reule v. M & T Mortg.*, 483 S.W.3d 600, 608 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

the evidence; we will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Kroger Co. v. Persley*, 261 S.W.3d 316, 319 (Tex. App.–Houston [1st Dist.] 2008, no pet.)).

"The factfinder is the exclusive judge of which facts have been proven, which witness is credible, and the weight to be given any witness's testimony." *Id.* Thus, when faced with conflicting evidence, the factfinder may believe one witness and disbelieve others. *Id.* (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986)).

The trial court signed the protective order at issue based on Shari's claim that Jesse sexually assaulted her. *See* Tex. Code Crim. Proc. arts. 7A.01, 7A.03 (trial court "shall issue" a protective order if it finds "reasonable grounds to believe that the applicant is the victim of sexual assault"). Under the Penal Code, sexual assault occurs if a "person intentionally or knowingly: (A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; [or] (B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent. . . ." Tex. Penal Code § 22.011(a)(1)(A), (B).

Shari's affidavit, admitted into evidence at the protective order hearing, detailed the sexual assaults that Jesse committed against her. Shari also testified during the hearing. Shari stated that Jesse physically restrained her in a room, forcibly penetrated her multiple times (vaginally and anally) over a period of hours, and forced her to perform oral sex on him. Shari did not consent to any of these assaults and her attempts to resist Jesse were met with slaps and threats. Detective Harris, who investigated the sexual assaults, testified that Shari appeared "upset, visibly shaking, [and] scared" on the night of the assault. When FBCSO officers

9

located Jesse, he was carrying a backpack containing a roll of duct tape and a trash bag—evidence corroborating Shari's statements. In contrast to Shari's testimony, Jesse testified that he did not sexually assault Shari.

The trial court was free to believe Shari's description and version of events and disbelieve Jesse's denial that he sexually assaulted Shari. *See McGalliard*, 722 S.W.2d at 697. Viewing the evidence described above in the light most favorable to the trial court's order, we conclude that Shari presented more than a scintilla of evidence from which the trial court could have reasonably believed that she was the victim of sexual assault. Further, considering all the evidence in the record, we conclude that the trial court's determination that there were reasonable grounds to believe that Shari was the victim of sexual assault is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Accordingly, we conclude legally and factually sufficient evidence supports the trial court's protective order. To the extent that Jesse challenges the legal and factual sufficiency of the evidence, we overrule his challenge.

## C. Selective Prosecution

In his first issue, Jesse claims the trial court subjected him to unlawful "selective prosecution." Although much of his argument concerns alleged facts outside our record,[5] it appears the gravamen of Jesse's complaint is that he was "prosecuted" for sexual assault, while Shari and her father, whom he claims were involved in some sort of conspiracy to sexually abuse his son, were not. For the

---

[5] Jesse refers repeatedly to the transcript from the criminal proceedings against him arising from the events that led to this protective order, but this transcript is not part of our record. Again, we do not consider Jesse's references to matters outside our record. *See, e.g.*, *Fox*, 455 S.W.3d at 668 n.5.

following reasons, we conclude that Jesse's selective prosecution claim is without merit.

"A selective prosecution claim is not a defense on the merits to a criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 457, 463 (1996). This protective order proceeding did not arise from criminal charges, but instead arose from Shari's application for a civil protective order pursuant to Code of Criminal Procedure article 7A.01 or, alternatively, Chapter 85 of the Texas Family Code. *See* Tex. Code Crim. Proc. art. 7A.01; Tex. Fam. Code §§ 85.001-.065. Thus, Jesse has no claim of selective prosecution.

However, a defense of discriminatory enforcement is based on constitutional guarantees of equal protection. *See* U.S. Const. amend. XIV, § 2; Tex. Const. art. I, § 3; *see also State v. Malone Serv. Co.*, 829 S.W.2d 763, 766 (Tex. 1992). Although originating in the context of criminal prosecutions, a discriminatory enforcement claim applies to civil proceedings involving state agencies. *Malone Serv. Co.*, 829 S.W.2d at 766. We presume without deciding that Jesse may complain of discriminatory enforcement in the present context because Shari was represented by the Fort Bend County District Attorney's Office.

To establish a discriminatory enforcement defense, a party must first show that he or she has been singled out for prosecution while others similarly situated and committing the same acts have not. *See id.*; *see also Odutayo v. City of Houston*, No. 01-12-00132-CV, 2013 WL 1718334, at *3 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.) (citing *Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 275 (Tex. App.—Austin 2007, pet. denied)). It is not enough to show that the law has been enforced against some and not others. A defendant must also show that the government has purposefully discriminated on the basis of such

impermissible considerations as race, religion, or the desire to prevent the exercise of constitutional rights. *Malone Serv. Co.*, 829 S.W.2d at 766.

Jesse's discriminatory enforcement complaint fails for several reasons. First, he has not established that he raised the defense in the trial court. Generally, to raise an issue for our review, a party must make a timely and specific complaint in the trial court. *See* Tex. R. App. P. 33.1; *cf. Lovill v. State*, 319 S.W.3d 687, 692 (Tex. Crim. App. 2009) ("While not always required, when a legal claim is rarely urged, like this [selective prosecution] one, the complaining party should invoke the controlling federal and state constitutional provisions or use key legal phrases to ensure that the trial judge is informed of the particular complaint. She could have used the words selective prosecution or equal protection under the law or cited the Equal Protection Clause. But Lovill did none of this."). Thus, Jesse has not preserved his complaint for our review.

Moreover, Jesse relies on unsubstantiated allegations that his son was sexually abused by Shari's father, but these allegations, even if true, do not show that others similarly situated and committing the same acts have not had protective orders entered against them. *See Malone Serv. Co.*, 829 S.W.2d at 766. Finally, although Jesse asserts discriminatory enforcement because he is uneducated, poor, and religious, he fails to show that these topics formed the basis of the protective order or were even discussed during the hearing. A discriminatory purpose is never presumed, and the party asserting the defense of discriminatory enforcement must show clear intent to discriminate in the enforcement of the statute. *Id.* at 767; *see also City of San Antonio v. Tex. Waste Sys., Inc.*, No. 04-06-00481-CV, 2007 WL 2042768, at *3 (Tex. App.—San Antonio July 18, 2007, pet. denied) (mem. op.).

Jesse has not established that the law has been discriminatorily enforced against him. We overrule his first issue.

## D. Undue or Unconstitutional Punishment

In his second issue, Jesse asserts that the protective order constitutes an "undue and unconstitutional punishment." Specifically, Jesse contends the trial court subjected him to unlawful punishment by finding that Shari was the victim of sexual assault, requiring him to complete sexual assault counseling and pay the costs associated with the protective order, and "labeling" him a sex offender and "subjecting" him to punishment. Jesse complains that the protective order's terms impose unconstitutional punishment because these proceedings are "pre-trial" and he has not been found guilty of the underlying criminal offense(s).

Courts have long held that entry of a protective order is not equivalent to prosecution for the underlying offense, and a protective order is not punishment. *See Ex parte Necessary*, 333 S.W.3d 782, 789 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Harris v. State*, 164 S.W.3d 775, 781-82 (Tex. App.—Houston [14th Dist.] 2005, pet ref'd) ("Certainly, the Legislature never intended a protective order to constitute a 'prosecution' or a 'punishment.' In fact, it has authorized the issuance of a protective order and the subsequent criminal prosecution for the same underlying conduct."); *see also Ex parte Chiarez*, No. 08-00-00083-CR, 2001 WL 63033, at *3 (Tex. App.—El Paso Jan. 25, 2001, no pet.) (not designated for publication) (explaining that purpose of protective orders is to prevent domestic violence and to protect victims of such violence, not to punish offenders). Rather, the primary purpose of protective orders is to prevent domestic violence and protect domestic violence victims. *See, e.g.*, Tex. Fam. Code § 81.001 ("A court shall render a protective order as provided by Section 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future."); Tex. Code Crim. Proc. art. 5.01 ("Family violence is a serious danger and threat to society and its members. Victims of family violence are entitled to the maximum protection from harm or

abuse or the threat of harm or abuse as is permitted by law."). "While the imposition of a protective order is always in response to an act or threat of violence, it can hardly be said that the order is either a 'prosecution' or a 'punishment' for that act or threat of violence." *Harris*, 164 S.W.3d at 782.

The protective order does not subject Jesse to punishment for the offending conduct forming the basis of the order. We overrule his second issue.

## E.    Bias

In issue three, Jesse complains that the trial court "was exposed to prejudicial outside influence in an unconstitutional manner." Jesse asserts that "the trier of fact was exposed to extraneous influences which altered the case via bias and partiality." More specifically, Jesse contends that statements made to the trial court by his former criminal defense attorney, David Stiller, resulted in not only "implied bias," but "actual bias" by the trial court. He alleges that the trial court's ejection of Jesse for insisting on his "rights" and refusal to allow Jesse to cross-examine Stiller were motivated by bias. The record does not support Jesse's position.

Parties have a right to a fair trial, which includes the fundamental component of a neutral and detached judge. *See Markowitz v. Markowitz*, 118 S.W.2d 82, 86 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Metzger v. Sebek*, 892 S.W.3d 20, 37-38 (Tex. App.—Houston [14th Dist.] 1994, writ denied)). A judge should not act as an advocate for or adversary to any party. *Metzger*, 892 S.W.2d at 38. "To reverse a judgment on the basis of judicial misconduct, a reviewing court must conclude both that judicial impropriety occurred and that the complaining party suffered harm." *Kroger Co. v. Milanes*, 474 S.W.3d 321, 344 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex. 1986); *Markowitz*, 118 S.W.3d at 86).

The preamble to the Texas Code of Judicial Conduct reminds judges of the judiciary's unique role in the American legal system and recognizes as intrinsic to all sections of the code that judges must respect and honor their judicial office as a public trust. Tex. Code Jud. Conduct, Preamble, *reprinted in* Tex. Gov't Code tit. 2, subtit. G., app. B. The individual canons state basic standards for judicial conduct and provide guidance to judges. *Id.*

Several canons are relevant to our analysis of Jesse's issues. For example, a judge shall perform judicial duties without bias or prejudice, and shall not initiate, permit, or consider ex parte communications made to the judge concerning the merits of a pending or impending proceeding. *Id.* Canon 3(b)(5), (8). Of perhaps greater relevance here, a judge must also "require order and decorum in proceedings before the judge." *Id.* Canon 3(B)(3).

Before the protective order hearing began, Jesse insisted that he had "made bond" and should be released immediately from custody. At that point, attorney David Stiller entered the courtroom. Stiller was Jesse's appointed counsel in the aggravated sexual assault and kidnapping criminal proceedings arising from the same events leading to the protective order application. The trial court questioned Stiller about Jesse's claim that he had posted bond. Jesse interrupted the conversation between the trial judge and Stiller, and the trial court warned him to stop interrupting. Jesse again spoke out, exclaiming that he was illegally detained in jail because he had not been indicted. The trial judge explained to Jesse that the protective order proceedings had nothing to do with a criminal indictment. Addressing the court, Jesse stated, "[Stiller] came to talk to me about having intercourse with farm animals. I said what? I am a serious person and taking all this stuff seriously. He have [sic] no business representing me." The trial court again warned Jesse that he should stop speaking over the court or else he would be

15

removed from the courtroom until the protective order proceedings started. Jesse responded that he had been "sitting in jail because other people have felonies that they haven't been arrested on" and that he was "being arrested and persecuted." The trial judge continued to speak with Stiller concerning the status of the criminal proceedings, but Jesse again interrupted, accusing Stiller of lying. At that point, the judge ordered Jesse removed from the courtroom and continued speaking to Stiller.

The record reveals that Jesse was removed from the courtroom and returned to the courtroom before the protective order hearing began. It appears that the trial judge removed Jesse to maintain decorum in proceedings. *See id.*; *cf. also Illinois v. Allen*, 397 U.S. 337, 345 (1970) (explaining that a trial judge may handle a disruptive defendant by, *inter alia*, "taking him out of the courtroom until he promises to conduct himself properly"). Jesse has failed to establish that the judge's actions in removing him from the courtroom temporarily and before the protective order proceedings began were motivated in any respect by improper influences or bias. The record demonstrates conclusively that the judge removed Jesse from the courtroom to maintain order until the proceedings started.

As to Jesse's complaint that the court prevented him from cross-examining Stiller because of bias, again the record does not support his claim. Stiller was not a witness in this case, and Jesse did not attempt to call Stiller as a witness.[6] Thus, the record does not reflect that the trial judge engaged in any improper conduct. Jesse presents no error in this regard.

We overrule Jesse's third issue.

---

[6] In response to Stiller's presence in the courtroom, Jesse stated, "I don't like you, dude," and "Dude, you're kicked out."

16

**F.    Vagueness Challenge**

In his fifth issue, Jesse contends that the trial court erred in issuing a 7A protective order because article 7A.01 is unconstitutionally vague.  Specifically, Jesse asserts that the term "victim" as used in the statute is vague because "[a] possible victim and actual victim are very different."[7]  He attempts to bolster his argument by referring to article 56.021, "Rights of Victim of Sexual Assault or Abuse, Stalking, or Trafficking," which discusses various rights of "victims" and provides that victims of various offenses, including sexual assault, have the right to request that the State's attorney file an application for a 7A protective order.  *See* Tex. Code Crim. Proc. art 56.021.  However, he has not explained how this article has any bearing on the 7A protective order granted in this case.  Even so, we conclude Jesse's void-for-vagueness challenge fails.

"When persons of common intelligence are compelled to guess a law's meaning and applicability, the law violates due process and is invalid."  *King Street Patriots v. Tex. Democratic Party*, 521 S.W.3d 729, 743 (Tex. 2017) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)); *cf. also Kelley v. State*, 429 SW.3d 865, 876 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (explaining criminal statutes are void for vagueness if they (1) fail to give a person of ordinary intelligence fair notice of the conduct prohibited or (2) are so indefinite as to encourage arbitrary and discriminatory enforcement).  To succeed on a facial due process challenge, a complainant must show that the law is impermissibly vague in all applications.[8]

---

[7] Jesse echoes the arguments he made in previous issues reflecting his belief that a 7A protective order may only be obtained following a criminal conviction.  As we explained *supra*, however, Chapter 7A does not require a conviction before a protective order may be obtained, and the Legislature has authorized the issuance of a protective order and a subsequent criminal prosecution for the same underlying conduct.  *See Harris*, 164 S.W.3d at 781-82.

[8] In his eleventh issue, Jesse asserts that the protective order is unconstitutional "as applied" to him.  He did not raise this argument in the trial court, however, and has not preserved the

17

*King Street Patriots*, 521 S.W.3d at 743 (citing *Vill. Of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)).

The term "victim" is not defined in Chapter 7A. However, "[a]ll words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specifically defined." Tex. Code Crim. Proc. art. 3.01. Black's Law Dictionary defines "victim" as "[a] person harmed by a crime, tort, or other wrong." Black's Law Dictionary (10th ed. 2014).[9] Similarly, Merriam-Webster defines victim as "one that is acted on and usually adversely affected by a force or agent." *Merriam-Webster Online Dictionary*, *available at* https://www.merriam-webster.com/dictionary/victim. The definition of "victim" does not turn on whether the actor has been convicted of a crime. And, as explained, this court has previously concluded that the Legislature "has authorized the issuance of a protective order and the subsequent criminal prosecution for the same underlying conduct." *Harris*, 164 S.W.3d at 781-82. A protective order under article 7A.01 may only be entered if, after a hearing, the trial court finds "there are reasonable grounds to believe that the applicant is the victim of sexual assault . . . ." Tex. Code Crim. Proc. art. 7A.03. The term "victim" as used in Chapter 7A does not fail to give a person of ordinary intelligence fair notice of the conduct prohibited and is not so indefinite as to encourage arbitrary and discriminatory enforcement.

---

complaint for our review. *See Webb v. Schlagel*, 530 S.W.3d 793, 806 (Tex. App.—Eastland 2017, pet. denied) ("[T]o preserve an "as-applied" challenge to the constitutionality of a statute, the defendant must have first raised the issue in the trial court."). Further, Jesse did not present argument and authority in support of this issue in his appellate brief.

[9] Similarly, Chapter 56 defines "victim" as "a person who is the victim of the offense of sexual assault, kidnapping, aggravated robbery, trafficking of persons, or injury to a child, elderly individual, or disabled individual or who has suffered personal injury or death as a result of the criminal conduct of another." Tex. Code Crim. Proc. art. 56.01(3).

Therefore, it is not unconstitutionally vague. *See King Street Patriots*, 521 S.W.3d at 744. We overrule Jesse's fifth issue.

## G. Right to Fair Criminal Trial

In the final issue that Jesse has briefed on appeal, he argues that the "trial court's ruling has deprived [him] of his ability to receive a fair criminal trial in the matter at issue." He argues that the protective order proceedings will prejudice his ability to receive a fair criminal trial on the charges stemming from the incident for which the protective order was granted. We conclude that this claim is not ripe for review.

Under the ripeness doctrine, courts must "consider whether, *at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000) (emphasis in original) (citations omitted). Thus, the ripeness analysis focuses on whether a case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all. *Id.* at 852.

Jesse has not yet faced his criminal trial. Thus, the threat of harm from any impact the protective order proceedings may have on his criminal proceedings is conjectural, hypothetical, and remote. *See, e.g.*, *id.* ("A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass."); *see also Robinson v. Parker*, 353 S.W.3d 753, 755-56 (Tex. 2011) (where, as here, plaintiff only offers "mere allegations and speculation" that a future injury will occur, a complaint is not ripe for review); *Sumner v. Bd. of Adjustment of City of Spring Valley Vill.*, No. 14-15-00149CV, 2016 WL 2935881, at *10-11 (Tex. App.—Houston [14th Dist.] May 17, 2016, pet. denied) (mem. op.) ("Because Sumner's

claim here depends on future events that may or may not occur, we hold it is not ripe and the trial court did not have jurisdiction over it."); *DuBois v. Williams*, No. 01-10-00074-CV, 2011 WL 1631813, at *3 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, no pet.) (mem. op.) ("Dr. DuBois does not assert that the language of the order is causing a problem; she asserts that it *may* cause a problem in the future. Accordingly, we conclude the claim is not ripe and this Court lacks jurisdiction.").

Jesse's claim that the protective order proceedings may have some impact on future criminal proceedings is not ripe for our review. We therefore overrule his sixth issue.

## H.    Jesse's Remaining Issues are not Briefed

Jesse listed eleven issues for review in his opening brief, but only presented argument as to his first six issues. His brief includes no argument or authority in support of his seventh, eighth, ninth, tenth, and eleventh issues. Although we undertake a "liberal reading" of a pro se litigant's filings, unrepresented parties "are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure." *Reule v. M & T Mortg.*, 483 S.W.3d 600, 608 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see also Valdes v. Whataburger Restaurants, LLC*, No. 14-16-00222-CV, 2017 WL 2602728, at *4 (Tex. App.—Houston [14th Dist.] June 15, 2017, no pet.) (mem. op.). Jesse must concisely state all issues presented, with appropriate citations to the record and to authority to support his arguments. *See* Tex. R. App. P. 38.1(i).

Because Jesse has failed to present any argument in support of issues seven through eleven, these issues present nothing for our review and are overruled.

## Conclusion

We have overruled Jesse's appellate issues. Accordingly, we affirm the protective order.


/s/      Kevin Jewell
         Justice


Panel consists of Justices Wise, Jewell, and Poissant.